[This opinion has been published in *Ohio Official Reports* at 81 Ohio St.3d 269.]

BOARD OF TRUSTEES OF MIAMI TOWNSHIP, APPELLEE, *v.* FRATERNAL ORDER OF POLICE, OHIO LABOR COUNCIL, INC., APPELLANT.

[Cite as *Miami Twp. Bd. of Trustees v. Fraternal Order of Police, Ohio Labor Council, Inc.*, 1998-Ohio-629.]

*Employment relations—Labor unions—Collective bargaining agreement— Arbitration—Arbitrator, after determining there was just cause to discipline an employee, has authority to review appropriateness of type of discipline imposed, when.*

Where an arbitrator's decision draws its essence from the collective bargaining agreement, and in the absence of language in the agreement that would restrict such review, the arbitrator, after determining that there was just cause to discipline an employee, has the authority to review the appropriateness of the type of discipline imposed.

(No. 96-2490—Submitted November 4, 1997—Decided March 25, 1998.)

APPEAL from the Court of Appeals for Montgomery County, No. 15930.

––––––––––––––––

{¶ 1} On April 10, 1996, appellee Board of Trustees of Miami Township filed a complaint in the Montgomery County Court of Common Pleas requesting that the court vacate an arbitration award made on March 30, 1996. The following facts were adduced at the arbitration hearing:

{¶ 2} On February 8, 1989, the Miami Township Police Department hired Patrick M. McCoy as a reserve officer and, on January 1, 1992, as a full-time officer. During the summer of 1995, McCoy applied for a position with the Moraine Police Department, and on August 24, 1995, as part of the application procedure, he was required to take a polygraph examination. During or prior to this

examination, he admitted to two thefts from citizens while serving as an officer for the Miami Township Police Department.

**{¶ 3}** In a written statement (dated September 8, 1995), and in testimony at the arbitration hearing, McCoy described the two thefts. The first occurred in early 1992, when he was dispatched to a possible incident of driving under the influence of alcohol or drugs. McCoy arrested the driver and placed him in the cruiser. Then in the inventory search of the car, McCoy found a large amount of cash and placed a one hundred dollar bill in his pocket. The second incident occurred within a month of the first incident when McCoy was sent to a hotel room to gather the belongings of a man who had been hospitalized after a mental breakdown. McCoy found a one hundred dollar bill on the floor and placed it in his pocket. McCoy stated that he was having serious financial difficulties at the time. He also stated that on both occasions he wanted to return the money but found no opportunity that would keep him free of suspicion. Both in his written statement and in his testimony he stated that he had done nothing else of the kind since then and expressed remorse for his acts.

**{¶ 4}** On August 30, 1995, at a meeting of police chiefs, and on September 6, 1995, in a letter, city of Moraine Police Chief David D. Hicks informed Miami Township Police Chief Tom Angel of McCoy's admissions. As part of Miami Township Police Department Captain Marvin E. Scothorn's duties as an internal affairs investigator, Chief Angel asked Scothorn to investigate the thefts. Captain Scothorn asked Sergeant Wilson to aid in the investigation of the thefts. A criminal investigation did not result in any evidence supporting McCoy's admissions, and accordingly on October 19, 1995, the prosecution declined to charge McCoy and the police closed the criminal investigation.

**{¶ 5}** On September 7, 1995, Captain Scothorn with McCoy and a union steward held a predisciplinary conference at which Scothorn described the allegations. At the conclusion of this conference, Scothorn suspended McCoy with

pay, pending the hearing before the township board of trustees. On September 8, 1995, Captain Scothorn sent a memorandum to Chief Angel in which Scothorn reported on his investigation and concluded that McCoy had violated multiple rules of the Miami Township Police Department Standard Operating Procedure Manual. On September 13, 1995, the Miami Township Board of Trustees voted to terminate McCoy's employment as a police officer.

{¶ 6} Pursuant to the collective bargaining agreement between Miami Township and the Fraternal Order of Police, Ohio Labor Council, Inc. ("FOP"), McCoy as a member of the FOP filed a grievance, which was referred to arbitration. On March 30, 1996, the arbitrator issued his decision making the following award:

"1.     The discharge of Ptl. Patrick McCoy was not for just cause.

"2.     The discharge is converted to a thirty-day suspension.

"3.     Ptl. Patrick McCoy shall be reinstated with full seniority, back pay retroactive to October 13, 1995 without any deductions, and full benefits.

"4.     Ptl. Patrick McCoy shall make restitution in the amount of $200 to the Township which sum shall be paid by the Township, without further identification, to a charity selected by Chief Thomas Angel."

{¶ 7} On April 10, 1996, the Miami Township Board of Trustees filed in the Montgomery County Court of Common Pleas a complaint requesting that the court vacate the arbitrator's award and reinstate the termination of McCoy's employment. The court of common pleas upheld the arbitrator's award and ordered reinstatement of McCoy's employment. The court of appeals reversed and remanded for a new arbitration hearing.

{¶ 8} This cause is now before this court pursuant to the allowance of a discretionary appeal.

_____

*Porter, Wright, Morris & Arthur, Jonathan Hollingsworth, Robert E. Portune, John J. Heron, Linda S. Holmes* and *Duane A. Boggs*, for appellee.

*Paul L. Cox, Gwen Callender* and *Gloria Sydnor*, for appellant.

_____

**ALICE ROBIE RESNICK, J.**

{¶ 9} The issue presented by this case is whether a labor arbitrator may review the appropriateness of the type of actual discipline that the employer imposed once the arbitrator finds that there was just cause for discipline of the employee.

{¶ 10} An arbitrator's award must " 'draw[] its essence from the collective bargaining agreement.' " *Queen City Lodge No. 69, Fraternal Order of Police, Hamilton Cty., Ohio, Inc. v. Cincinnati* (1992), 63 Ohio St.3d 403, 406, 588 N.E.2d 802, 805, quoting *United Steelworkers of Am. v. Ent. Wheel & Car Corp.* (1960), 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424, 1428. Section 3, Article VII of the collective bargaining agreement in the case *sub judice* states:

"The Employer may not suspend, discharge or otherwise discipline employees except for just cause. * * *

"(A) Discipline shall take into account the nature of the violation, the employee[']s record of discipline and the employee's record of performance and conduct."

{¶ 11} In the case *sub judice*, the arbitrator found that while there was no just cause to discipline McCoy for theft in office, there was sufficient just cause to discipline him for having been untruthful. The arbitrator then determined that the appropriate sanction would be a thirty-day suspension and "restitution" of the money he took. (Actual restitution to the victims was impossible because the victims could not be found.) Appellee contends that once the arbitrator determines that there was just cause to discipline an employee, the arbitrator must defer to the decision of the employer as to the type of discipline imposed. Appellant asserts that the arbitrator may review the appropriateness of the type of discipline imposed as the arbitrator did in the case at bar.

**{¶ 12}** In Schoonhoven, Fairweather's Practice and Procedure in Labor Arbitration (3 Ed.1991), this exact issue is discussed:

"Disciplinary cases constitute the largest single group of cases which are brought to arbitration, and a wide variety of special remedies in such cases have been fashioned by arbitrators. Arbitrators have noted that the contractual right of the employer to discipline and discharge employees for 'just cause' requires the arbitrators to make two determinations in considering cases: (1) whether a cause for discipline exists and (2) whether the amount of discipline was proper under the circumstances. For example, Arbitrator Burton B. Turkus explained:

" 'In applying the test of "just cause" the arbitrator is generally required to determine two factors: (a) has the commission of the misconduct, offense or dereliction of duty, upon which the discipline administered was grounded, been adequately established by the proof; and (b) if proven or admitted, the reasonableness of the disciplinary penalty imposed in the light of the nature, character and gravity thereof—for as frequently as not the reasonableness of the penalty (as well as the actual commission of the misconduct itself) is questioned or challenged in arbitration.

" 'In the absence of contract language expressly prohibiting the exercise of such power, the arbitrator, by virtue of his authority and duty to fairly and finally settle and adjust (decide) the dispute before him, has the inherent power to determine the sufficiency of the cause and the reasonableness of the penalty imposed.' " *Id.* at 327, quoting *Great Atlantic & Pacific Tea Co.* (1962), 63-1 Labor Arbitration Awards, ¶ 8027, at 3090. See, also, Volz & Goggin, Elkouri & Elkouri: How Arbitration Works (5 Ed.1997) 886-888.

**{¶ 13}** We agree with this reasoning. As this court noted in *Queen Cty Lodge*, "[t]he parties to a collective bargaining agreement can not anticipate every possible breach of the agreement that may occur during its life and then write an appropriate remedy for each such situation into the agreement. This fact does not,

however, preclude an arbitrator from awarding a remedy." *Queen City Lodge*, 63 Ohio St.3d at 405, 588 N.E.2d at 804. Specific to the case at bar, the parties cannot anticipate the type of discipline appropriate to every possible infraction, and thus without further instruction from the collective bargaining agreement, the arbitrator must be able to review the type of discipline. Accordingly, we hold that where an arbitrator's decision draws its essence from the collective bargaining agreement, and in the absence of language in the agreement that would restrict such review, the arbitrator, after determining that there was just cause to discipline an employee, has the authority to review the appropriateness of the type of discipline imposed.

{¶ 14} In the case *sub judice*, the collective bargaining agreement does not prevent the arbitrator from reviewing the appropriateness of the type of discipline imposed. The only stated restriction is that "[t]he arbitrator shall have no power to add to, subtract from, or change any of the provisions of this Agreement." In fact, the agreement invites review by stating that "[d]iscipline shall take into account the nature of the violation, the employee[']s record of discipline and the employee's record of performance and conduct." Under this provision, the type of discipline is not automatic for a particular offense.

{¶ 15} Having held that unless otherwise restricted by the collective bargaining agreement, the arbitrator has the authority to review the type of discipline imposed, we now proceed to consider whether the decision of the arbitrator was indeed appropriate. In *Queen City Lodge*, we set forth the proper standard of review a court must use when evaluating an arbitrator's decision:

"The arbitrator's award will not be vacated so long as the award 'draws its essence from the collective bargaining agreement.' *United Steelworkers of America v. Ent. Wheel & Car Corp.* (1960), 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424, 1428; *Ohio Office of Collective Bargaining v. Ohio Civil Service Employees Assn., Local 11, AFSCME, AFL-CIO* (1991), 59 Ohio St.3d 177, 179, 572 N.E.2d 71, 73; *Goodyear Tire & Rubber Co. v. Local Union No. 200* (1975),

42 Ohio St.2d 516, 71 O.O.2d 509, 330 N.E.2d 703, paragraph one of the syllabus, certiorari denied (1975), 423 U.S. 986, 96 S.Ct. 393, 46 L.Ed.2d 303.

"Additionally, R.C. 2711.10(D) guides us, because that statute allows an arbitrator's award to be vacated when the arbitrator has exceeded his or her powers. For our purposes, the converse is also true — if the arbitrator has *not* exceeded his or her powers, the award should not be vacated or modified, absent any of the other circumstances in R.C. 2711.10 and 2711.11 (such as corruption, fraud, misconduct, partiality, or material mistake).

"An arbitrator has broad authority to fashion a remedy, even if the remedy contemplated is not explicitly mentioned in the labor agreement. See *General Tel. Co. of Ohio v. Communications Workers of America, AFL-CIO* (C.A.6, 1981), 648 F.2d 452, 456-457; *United Steelworkers v. Enterprise Wheel, supra,* 363 U.S. at 597, 80 S.Ct. at 1361, 4 L.Ed.2d at 1428. Once the arbitrator has made an award, that award will not be easily overturned or modified. It is only when the arbitrator has overstepped the bounds of his or her authority that a reviewing court will vacate or modify an award." (Emphasis *sic.*) Queen *City Lodge*, 63 Ohio St.3d at 406-407, 588 N.E.2d at 805.

{¶ 16} In the case *sub judice*, we find that the arbitrator's decision draws its essence from the collective bargaining agreement. The arbitrator determined that because the board of trustees did not consider McCoy's past disciplinary and work records, his voluntary disclosure of the incidents, his feelings of guilt and remorse over the incidents, and his apparent dedication to being truthful and honest in the future, the board of trustees did not properly "take into account the nature of the violation, the employee[']s record of discipline and the employee's record of performance and conduct." This decision is based on the language and requirements of the collective bargaining agreement itself, and therefore the arbitrator has not exceeded his powers.

{¶ 17} Upon our review of the record, we also find that the discipline the arbitrator actually imposed is consistent with the collective bargaining agreement. The arbitrator found that because McCoy did not admit the incidents until he faced the polygraph examination and continued to be evasive about them afterward, there was just cause for some kind of discipline, which he found to be a thirty-day suspension and restitution in the amount of two hundred dollars. Moreover, we do not find, as did the court of appeals, any evidence of partiality on the part of the arbitrator. R.C. 2711.10(B). We find that the arbitrator's award draws its essence from the collective bargaining agreement and is not arbitrary, capricious, or unlawful, and therefore we will not, in this situation, "substitute our judgment for that of the arbitrator." *Queen City Lodge*, 63 Ohio St.3d at 407, 588 N.E.2d at 806; *Mahoning Cty. Bd. of Mental Retardation & Developmental Disabilities v. Mahoning Cty. TMR Edn. Assn.* (1986), 22 Ohio St.3d 80, 22 OBR 95, 488 N.E.2d 872, paragraph one of the syllabus.

{¶ 18} Accordingly, the judgment of the court of appeals is reversed, and the judgment of the trial court is reinstated.

*Judgment reversed.*

DOUGLAS, F.E. SWEENEY and PFEIFER, JJ., concur.

MOYER, C.J., COOK and LUNDBERG STRATTON, JJ., dissent.

———————————

**Moyer, C.J., dissenting.**

{¶ 19} I concur in the syllabus, but I respectfully dissent from the judgment because I do not agree that the decision of the arbitrator draws its essence from the collective bargaining agreement.

{¶ 20} A review of arbitrator Peter Florey's award indicates a consideration of the employee's "deep guilt," his "confession of sin," and his "change in personality" in his decision to modify the disciplinary action imposed by the employer. The collective bargaining agreement, by contrast, required only that

8

"[d]iscipline shall take into account the nature of the violation, the employee[']s record of discipline and the employee's record of performance and conduct."

{¶ 21} Had the arbitrator considered the above language of the agreement, the nature of the violation itself—admitted police officer thievery—compels the conclusion that termination was the proper discipline imposed. A police officer must "keep his or her activities above suspicion both on and off duty." *Jones v. Franklin Cty. Sheriff* (1990), 52 Ohio St.3d 40, 44, 555 N.E.2d 940, 945.

{¶ 22} Contrary to the conclusion of the majority, the board of trustees was not allowed to consider the employee's admissions, his guilt over his indiscretions, or his conversion of faith. The collective bargaining agreement allowed the board, and the arbitrator, to consider only the "nature of the violation, the employee[']s record of discipline and the employee's record of performance and conduct." Given the reliance of the arbitrator on other factors and his failure to specifically address the factors listed in the agreement, his modification of discipline clearly "could not be rationally derived from the terms of the agreement." *Ohio Office of Collective Bargaining v. Ohio Civ. Serv. Emp. Assn., Local 11, AFSCME, AFL-CIO* (1991), 59 Ohio St.3d 177, 183, 572 N.E.2d 71, 76. As there is no "rational nexus between the agreement and the award," the essence of the arbitrator's decision cannot have been drawn from the collective bargaining agreement. *Mahoning Cty. Bd. of Mental Retardation & Developmental Disabilities v. Mahoning Cty. TMR Edn. Assn.* (1986), 22 Ohio St.3d 80, 22 OBR 95, 488 N.E.2d 872, paragraph one of the syllabus.

{¶ 23} Accordingly, I respectfully dissent from the judgment.

COOK and LUNDBERG STRATTON, JJ., concur in the foregoing dissenting opinion.

———————————