DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Sandusky County Court of Common Pleas granting appellee, the city of Bellevue's motion to vacate, modify and set aside arbitration award. Because we conclude that the trial court erred in vacating the arbitrator's award, we reverse.
 {¶ 2} The facts giving rise to this appeal are as follows. In 2000, the Bellevue, Ohio City Auditor, Ethel Foti, became ill and was frequently absent from work. The record shows that Bellevue Mayor, George Branco, encouraged Foti to accept help in running her office but she refused. Foti employed Kathy Crawford as a full time account clerk. Crawford belonged to the American Federation of State, County and Municipal Employees ("AFSCME"). Among her duties as an account clerk, Crawford was responsible for paying the city's vendors for the goods and services they provided. In November 2000, it came to Mayor Branco's attention that the city's gasoline and diesel fuel supplier, Daniel Lepley, had not been paid for six months. The mayor held a meeting on January 9, 2001 with Crawford and Lepley to discuss the problem. Also present at the meeting was Bellevue Street Superintendent, Mark Dietzel, and Bellevue Water Superintendent, Bill Bauman. At the meeting, Crawford claimed she had not paid Lepley because she had not yet received the proper paper work from various city departments showing how much fuel each department had used. She also complained of working long hours due to the illness of Ethel Foti. According to Mark Dietzel, the mayor informed Crawford he was "tired of excuses" and that her failure to pay Lepley's bill was an embarrassment to the city. In response, Crawford angrily walked out of the meeting. She returned seconds later and announced that she was going home.
 {¶ 3} On February 5, 2001, Ethel Foti resigned her position as Bellevue City Auditor after the mayor formally charged her with nonfeasance, misfeasance and gross neglect of duty. She was replaced the next day by former Sandusky County Clerk of Courts, Linda Cooper-Smith. Copper-Smith soon discovered that on the weekend before Foti's resignation, Crawford and other city employees went into the auditor's office and deliberately backdated numerous city purchase orders so they would appear to have been prepared in a timely fashion.
 {¶ 4} On February 7, 2001, pursuant to Article 4, Section 1 of the parties' collective bargaining agreement, Crawford received a letter from the mayor notifying her that a pre-disciplinary hearing was being convened to present her with charges for possible disciplinary action. The charges as set forth in the letter were as follows:
 {¶ 5} "1. Gross insubordination/willful neglect of duties: On January 9, 2001, without permission, you rudely and abruptly left an important meeting arranged and attended by the Mayor, and you then walked off the job.
 {¶ 6} "2. Willful neglect of duties: Upon leaving both the above-mentioned meeting and the City Centre on January 9, 2001, you failed to clock out properly as you left work; later in the day, you returned to work without properly clocking in.
 {¶ 7} "3. Gross Misconduct: On January 9, 2001, while leaving the above-mentioned meeting, in a public area of the Bellevue City Centre, you directed an angry and vulgar expletive at a visiting member of the public without any provocation or justification, thereby, jeopardizing the general welfare of a citizen.
 {¶ 8} "4. Theft/falsification of time records: On January 9, 2001, you worked less than a full day and failed to follow proper clock in and clock our procedures; however, you subsequently submitted time records requesting pay, including overtime pay, for a total of 9.25 hours of work on January 9, 2001."
 {¶ 9} On March 6, 2001, pursuant to Article 4, Section 1 of the parties' collective bargaining agreement, Crawford received a letter from Cooper-Smith notifying her that another pre-disciplinary hearing was being convened to present her with charges for possible disciplinary action. Specifically, the letter stated: "[T]he charge warranting this pre-disciplinary hearing is gross mis-conduct; in that, you deliberately entered false and misleading dates on numerous purchase orders during the year 2001."
 {¶ 10} Both hearings were held in March 2001. Following the hearings, on March 23, 2001, the hearing officer recommended that Crawford's employment with the city be terminated for just cause. The mayor and Cooper-Smith concurred with the hearing officer's recommendation and sent Crawford a letter notifying her that her employment with the city of Bellevue was "terminated effective immediately."
 {¶ 11} On March 28, 2001, appellant AFSCME filed a grievance on Crawford's behalf against appellee, the city of Bellevue, alleging that Crawford's employment was terminated without just cause. Pursuant to Article 5, section 3 of the parties' collective bargaining agreement, the matter was referred to arbitration. A hearing was held on November 16, 2001. On February 8, 2002, the arbitrator sustained Crawford's grievance in part and denied it in part. In a written decision, the arbitrator explained that Crawford became the scapegoat for problems that existed in the auditor's office due to the auditor's absence. The arbitrator noted that had the auditor's position been an appointed one as opposed to an elected one, the mayor could have acted sooner to contain the damage to the office. In sum, the arbitrator concluded that but for the management failures that were beyond Crawford's control, the events of January 9 involving the mayor's meeting and the events of February 2001, regarding the purchase orders would never have occurred. Finding no just cause for Crawford's termination, the arbitrator stated:
 {¶ 12} "The Grievant's discharge is to be set aside and she is to be returned to her former position with no loss of seniority, wages or other benefits that she would have been entitled to but for her termination, less a 13 day disciplinary suspension * * *"
 {¶ 13} On May 9, 2002, appellee, the city of Bellevue, filed a motion in the Sandusky County Court of Common Pleas to vacate, modify and set aside the arbitration award. On October 16, 2002, the trial court granted the motion thereby upholding the city's termination of Crawford's employment. Appellant AFSCME now appeals setting forth the following assignment of error:
 {¶ 14} "The common pleas court exceeded its authority under R.C. 2711 and ohio case law and thus committed reversible error when the court vacated the arbitrator's award and denied afscme's motions to dismiss and to confirm the arbitrator's award."
 {¶ 15} "[I]t is the policy of the law to favor and encourage arbitration and every reasonable intendment will be indulged to give effect to such proceedings and to favor the regularity and integrity of the arbitrator's acts." Lake County Bd. of Mental Retardation Developmental Disabilities v. Professional Ass'n for the Teaching of theMentally Retarded, (1994), 71 Ohio St.3d 15, 17, citations omitted. Arbitration awards are presumed valid, and a reviewing court may not merely substitute its judgment for that of the arbitrator. Findlay CitySchool District Board of Education v. Findlay Edu. Assn. (1990),49 Ohio St.3d 129, reversed on other grounds, Cincinnati v. Ohio Council8, AFSCME (1991), 61 Ohio St.3d 658. R.C. 2711.10 sets forth narrow grounds upon which a court of common pleas may review an arbitration award. A common pleas court may vacate an arbitration award upon the application of a party if any of the following apply:
 {¶ 16} "(A) The award was procured by corruption, fraud, or undue means.
 {¶ 17} "(B) There was evident partiality or corruption on the part of the arbitrators, or any of them.
 {¶ 18} "(C) The arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.
 {¶ 19} "(D) The arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."
 {¶ 20} The jurisdiction of the Common Pleas Court to review arbitration awards is thus statutorily restricted; it is narrow and it is limited." Miller v. Gunckle, 96 Ohio St.3d 359 2002-Ohio-4932; WarrenEdn. Assn. v. Warren City Bd. of Edn. (1985), 18 Ohio St.3d 170, 173.
 {¶ 21} When determining whether the arbitrator exceeded his powers, the reviewing court must confirm the arbitration award if it finds that "the arbitrator's award draws its essence from the collective bargaining agreement and it is not unlawful, arbitrary or capricious, * * *." Bd. of Trustees of Miami Twp. v. Fraternal Order of Police, OhioLabor Council, Inc. (1998), 81 Ohio St.3d 269, syllabus. On appellate review, this court is confined to an evaluation of the order issued by the trial court pursuant to R.C. 2711, and the substantive merits of the award are not reviewable absent evidence of material mistake or extensive impropriety. Warren Edn. Assn. v. Warren City Bd. of Edn., supra.
 {¶ 22} In its decision vacating the arbitrator's award, the trial court stated:
 {¶ 23} "The court concludes that the arbitrator's award violates public policy in that it disregards the City's authority, as recognized under the parties' collective bargaining agreement, to terminate an employee who has engaged in the falsification of records and other acts of dishonesty, * * *
 {¶ 24} "The arbitrator's award violates public policy in that it undermines the City's ability to terminate an employee whom it has reasonably determined is untrustworthy and deceitful and, therefore, unsuitable for employment in a position of public trust that calls for a person having the characteristics of honesty, integrity and trustworthiness."
 {¶ 25} The trial court in this case essentially concluded that because the arbitrator did not agree with the City's recommendation that Crawford's employment be terminated, the arbitrator exceeded his authority under the collective bargaining agreement. We disagree with the trial court's reasoning. The Ohio Supreme Court in Board of Trustees v.FOP, Ohio Labor Council, supra, noted that the parties to a collective bargaining agreement cannot anticipate every possible breach of the agreement that may occur and then fashion an appropriate remedy for each situation. Therefore, "* * * where an arbitrator's decision draws its essence from the collective bargaining agreement, and in the absence of language in the agreement that would restrict such review, the arbitrator, after determining that there was just cause to discipline an employee, has the authority to review the appropriateness of the type of discipline imposed." Id. Moreover, an arbitrator has broad authority to fashion a remedy, even if the remedy contemplated is not explicitly mentioned in the labor agreement. Id, citing General Tel. Co. of Ohio v.Communications Workers of America, AFL-CIO (C.A. 6, 1981), 648 F.2d 452,456-457 citing United Steelworkers v. Enterprise Wheel, 363 U.S. at 593,597, 80 So. Ct. at 1361, 4 L. Ed.2d at 1428.
 {¶ 26} The collective bargaining agreement in this case does not restrict the arbitrator from reviewing the appropriateness of discipline imposed on a grievant. As in the above cited case, the only stated restriction is that "the arbitrator shall not be empowered to rule contrary to, to amend, to add to, or to eliminate any provisions of this agreement." The arbitrator in this case found there was cause for some discipline under Article 4 of the collective bargaining agreement but that the city failed to prove that Crawford's infractions were serious enough to bypass the steps of progressive discipline found in the parties' agreement. Article 4 reads in pertinent part:
 {¶ 27} "Disciplinary action shall consist of the following, in this order:
 {¶ 28} "A. First violation will subject the employee to no more than an oral reprimand
 {¶ 29} "B. After the second occurrence of a similar violation, and having had an oral reprimand, the employee is subject to no more than a written reprimand
 {¶ 30} "C. Upon the third occurrence of a similar violation, and after having had an oral and a written reprimand, the employee is subject to a suspension of nor more than one day.
 {¶ 31} "D. Continued violations after the previous steps have been taken may subject the employee to a suspension of not more than three days.
 {¶ 32} "E. Continued violations after the previous steps have been taken may subject the employee to further suspension or dismissal.
 {¶ 33} "* * *
 {¶ 34} "The parties agree that major infraction shall be considered as follows: offenses of theft, embezzlement of public funds, being under the influence of alcoholic beverages or abusive drugs during work hours, physical violence, offenses involving gross misconduct or gross insubordination, and for willful and wanton violations of the work rules and procedures of the employee shall be subject to more disciplinary action rather than the steps of the progressive disciplinary procedures above."
 {¶ 35} The arbitrator in this case found Crawford's behavior to be insubordinate but not
 {¶ 36} rising to the level of "gross" insubordination which the arbitrator, citing Webster's Ninth New Collegiate Dictionary, defined as "course in nature or behavior: gravely deficient in civility or decency: crudely vulgar." In the decision, the arbitrator paid particular attention to the larger management problems he deemed to be beyond Crawford's control. The arbitrator found that Crawford had violated the city's policy regarding use of the time clock but that Crawford's behavior was understandable given the events of the January 9 meeting. As for the allegations that she falsified time records, the arbitrator noted that Crawford claimed she worked overtime with the permission of Ethel Foti and that the city did not refute that claim. Furthermore, the arbitrator found that even though the reason Crawford backdated the purchase orders was not clear, "no real harm was done." Nevertheless, the arbitrator found that this conduct merited a three day suspension. The arbitrator also took issue with the fact that Crawford was not forthcoming with Linda Cooper-Smith regarding the purchase orders. For this reason, the arbitrator found that Crawford should receive a ten day suspension for failing to tell her new boss the truth.
 {¶ 37} Based on the foregoing, we conclude that the arbitrator's award in this case draws its essence from the collective bargaining agreement and is not arbitrary, capricious, or unlawful. It follows that the trial court erred in vacating the arbitrator's award. Appellant's assignment of error is found well-taken.
 {¶ 38} Cross-appellant, the city of Bellevue, sets forth the following cross-assignment of error:
 {¶ 39} "The trial court erred in failing to vacate and set aside the arbitrator's decision and award under R.C. 2711.10(B) based upon the arbitrator's demonstrated bias in favor of the grievant."
 {¶ 40} The only evidence the city offers in support of its contention that the arbitrator was biased towards Crawford is the fact that the arbitrator found no just cause for the termination of Crawford's employment. Having already determined that the arbitrator's award was drawn from the essence of the collective bargaining agreement, cross-appellant's cross-assignment of error is found not well-taken.
 {¶ 41} On consideration whereof, the judgment of the Sandusky County Court of Common Pleas, is reversed. This matter is remanded to said court for further proceedings consistent with this decision. Costs to appellee.
Judgment Reversed.
Richard W. Knepper, J., Judith Ann Lanzinger, J. and Arlene Singer, J., concur.