OPINION
{¶ 1} The American Federation of State, County, and Municipal Employees, Ohio Council 8 ("AFSCME" or "the Union") appeals from the trial court's decision and entry vacating an arbitration award that had ordered appellee City of Dayton to reinstate the employment of union member Gary Milem.
 {¶ 2} In its sole assignment of error, AFSCME contends the trial court erred by vacating rather than confirming the arbitration award. In support, the Union advances four arguments. First, the Union contends the trial court erred in substituting its interpretation of the applicable collective bargaining agreement ("CBA") for that of the arbitrator. Second, the Union asserts that the trial court erred by redetermining facts decided by the arbitrator. Third, the Union claims the trial court erred in finding that the appropriate discipline for Milem was not an issue submitted to the arbitrator. Fourth, the Union maintains that the trial court erred in finding the arbitrator's award to be in violation of public policy.
 {¶ 3} As set forth more fully below, we agree that the trial court erred in vacating the arbitration award. Under the parties' CBA, the arbitrator had the discretion to determine whether just cause existed to discipline Milem and, if so, whether termination was appropriate. In our view, the arbitrator's decision addressing these issues drew its essence from the CBA. In addition, the arbitrator's reinstatement order did not violate any explicit and well-defined public policy. As a result, the trial court lacked authority to vacate the award, which should have been confirmed. Accordingly, we will reverse the trial court's judgment and remand the cause for the trial court to confirm the arbitration award.
 I. Background {¶ 4} The record reflects that Milem worked for the City on the night shift at a water treatment plant. On May 9, 2003, he left an anonymous message on a shared computer system at work. The message read: "What, are you laughing at? YOU will die it's just a matter of when and how." Some employees expressed concern over the message, which they interpreted as a death threat. Milem ultimately was confronted and admitted having posted it. He insisted that he had intended the message to be funny and philosophical rather than threatening. Nevertheless, the City charged Milem with conduct unbecoming an employee, unauthorized use of public equipment, and work-rule violations. He was fired for his conduct.
 {¶ 5} The Union grieved Milem's discharge, and the matter went to arbitration. Following a hearing on the matter, the arbitrator found that the City had just cause to discipline Milem but that the punishment imposed was too severe for the offense. As a result, the arbitrator ordered Milem reinstated with back pay less a thirty-day suspension. The trial court subsequently reversed the arbitrator's decision and upheld Milem's termination. This timely appeal followed.
 II. Analysis {¶ 6} Resolution of this appeal implicates R.C. § 2711.10(D), which authorizes the vacation of an arbitration award only where "[t]he arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter was not made."[1]
 {¶ 7} The trial court made several findings to support its determination that the foregoing standard had been satisfied here. First, the trial court found that the arbitrator improperly had imposed a progressive-discipline policy on the City. Second, the trial court found that the arbitrator erroneously had applied a non-existent due process requirement. Third, the trial court found that the arbitrator had overlooked "obvious" distinctions between Milem's misconduct and the actions of other City employees who had received less severe discipline. Finally, the trial court held that the arbitrator's reinstatement award would violate public policy embodied in R.C. § 2909.23, which provides that making a "terroristic threat" is a third-degree felony.
 {¶ 8} Upon review, we conclude that the trial court erred in vacating the arbitrator's reinstatement order under R.C. §2711.10(D). The overriding issue in this case is whether the City had just cause to fire Milem. Resolution of this issue required the arbitrator to make two determinations: "`(1) whether a cause for discipline exists and (2) whether the amount of discipline was proper under the circumstances.'" Board of Trustees of MiamiTwp. v. Fraternal Order of Police, Ohio Labor Council, Inc.,81 Ohio St.3d 269, 272, 1998-Ohio-629, quoting Schoonhoven, Fairweather's Practice and Procedure in Labor Arbitration (3 Ed. 1991). In the absence of contract language to the contrary, the arbitrator had the inherent power to determine the adequacy of the cause and the reasonableness of the penalty imposed. Id. If the arbitrator did not exceed his power in resolving these issues, then his award should not have been vacated under R.C. §2711.10(D) even if the trial court disagreed with it. Id. at 273-274; see also United Paperworkers Int'l Union, AFL-CIO v.Misco, Inc. (1987), 484 U.S. 29, 38 ("[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed a serious error does not suffice to overturn his decision."); City of Cleveland v. Fraternal Orderof Police, Lodge No. 8 (1991), 76 Ohio App.3d 755, 758 ("When parties agree to submit their dispute to binding arbitration, they agree to accept the result, regardless of its legal or factual accuracy.").
 {¶ 9} This is so because a court's review of an arbitrator's award is limited. "Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and the meaning of the contract that they have agreed to accept. Courts thus do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts. To resolve disputes about the application of a collective-bargaining agreement, an arbitrator must find facts and a court may not reject those findings simply because it disagrees with them. The same is true of the arbitrator's interpretation of the contract. The arbitrator may not ignore the plain language of the contract; but the parties having authorized the arbitrator to give meaning to the language of the agreement, a court should not reject an award on the ground that the arbitrator misread the contract. So, too, where it is contemplated that the arbitrator will determine remedies for contract violations that he finds, courts have no authority to disagree with his honest judgment in that respect." UnitedPaperworkers, 484 U.S. at 38 (citations omitted).
 {¶ 10} In light of the deference owed to an arbitrator's decision, a court is "limited to determining whether an arbitration award is unlawful, arbitrary, or capricious and whether the award draws its essence from the CBA. An award draws its essence from the CBA when there is a rational nexus between the CBA and the award." Southwest Ohio Reg. Transit Auth. v.Amalgamated Transit Union, Local 627, 91 Ohio St.3d 108, 110,2001-Ohio-294. If an arbitrator's award does draw its essence from the CBA, it follows that the award cannot be vacated under R.C. § 2711.10(D), which authorizes such action where the arbitrator exceeded his powers, or so imperfectly executed them, that a mutual, final, and definite award was not made.
 {¶ 11} In the present case, we conclude that the arbitrator's award draws its essence from the CBA and is not subject to vacation under R.C. § 2711.10(D). Article 2 of the CBA authorizes the City to "[s]uspend, discipline, demote or discharge" employees for "just cause." Similarly, Article 25 provides that "[d]isciplinary action shall be only for just cause[.]" The CBA does not define the phrase "just cause," however, and the parties previously agreed that the just-cause issue was for the arbitrator to decide. (Arbitration transcript at 10-11). Thus, the existence or non-existence of just cause for Milem's discharge plainly was a matter within the scope of the arbitrator's authority and discretion.
 {¶ 12} At the outset of his written decision, the arbitrator properly identified the questions before him as follows: "Did the Employer violate the Contract and act without just cause in the termination of the Grievant? If so, what is the appropriate relief[?]" In resolving these issues, the arbitrator divided his analysis into three issues: (1) whether Milem had "prior notice that his action could result in discipline including immediate termination"; (2) whether there "was a thorough and complete investigation conducted prior to implementing disciplinary action"; and (3) whether Milem's "punishment was befitting the rule infraction[.]"
 {¶ 13} With regard to the first issue, the arbitrator noted that various parts of the CBA, civil service rules, and workplace rules identified a range of potential penalties for different forms of misconduct. The arbitrator found, however, that none of these authorities made reference to the use of progressive discipline or summary discharge. The arbitrator also found no evidence that the City had informed Milem or the Union that it was considering summary discharge as punishment for his actions. As for the second issue, the arbitrator found that the City had performed an extensive investigation of Milem's misconduct. Based upon the investigation, the arbitrator concluded that Milem had committed one inappropriate act and was subject to discipline. With regard to the third issue, the arbitrator noted Milem's lack of prior discipline. The arbitrator also determined that "similar" misconduct such as threats, intimidation, and harassment by other employees had not resulted in termination. The arbitrator then reasoned as follows:
 {¶ 14} "The Grievant's act in entering the anonymous message was admitted by all parties [to be] improper and in bad taste. The choice of words allowed the reader to extract different meaning[s]. The record clearly indicates the Grievant's message was not the only such message entered on the system. The Employer offers no evidence or testimony of any attempt to recall and determine who entered such `inappropriate' messages.
 {¶ 15} "There is a past pattern of discipline related to threat, harassment, and intimidation. None resulted in a disciplinary penalty of discharge, let alone summary discharge.
 {¶ 16} "The Grievant used poor judgment in entering this message. Such action is subject to discipline, but such penalty should be less than discharge."
 {¶ 17} The arbitrator then held that the appropriate punishment for Milem's misconduct was a thirty-day suspension.
 {¶ 18} In vacating the arbitrator's award, the trial court reasoned that the civil service rules and workplace rules, which the CBA incorporated by reference, authorized the City to discharge a worker for conduct unbecoming an employee, the unauthorized use of public equipment, the violation of any law, and engaging in threatening or abusive behavior. We do not dispute this proposition. The civil service rules and workplace rules did identify dismissal as one potential form of punishment for such offenses, along with other less severe sanctions such as demotion or suspension. Moreover, the CBA gave the City authority to "[s]uspend, discipline, demote or discharge for just cause[.]"
 {¶ 19} It does not follow, however, that management effectively "reserved the right" to discharge Milem under the facts of this case, as the City argues on appeal. The fact that the civil service rules and workplace rules identify a range of potential penalties, including discharge, that may be imposed for misconduct of the type at issue here does not mean that the arbitrator was precluded from second-guessing the City's punishment of choice. To the contrary, any sanction for the violation of a rule adopted by management remains subject to the just-cause standard set forth in the CBA. Stated differently, management's right to make and enforce workplace rules and regulations does not carry with it an unreviewable right to determine that a violation of those rules warrants discharge for just cause. See, e.g., Southwest Ohio Regional Transit Auth.,91 Ohio St.3d at 110-111, 2001-Ohio-294, citing Local No. 7,United Food Commercial Workers Internat'l. Union v. KingSoopers, Inc. (10th Cir. 2000), 222 F.3d 1223; see also FirstNational Supermarkets, Inc. v. Retail, Wholesale Chain StoreFood Employees Union Local 338 (2nd Cir. 1997), 118 F.3d 892. Although the CBA granted the City the right to discharge Milem for just cause and the civil service/workplace rules identified misconduct that could result in discharge, it remained up to the arbitrator to determine whether Milem's particular actions in this case gave the City just cause to fire him.
 {¶ 20} The essence of the arbitrator's ruling is that Milem's misconduct did not warrant discharge in light of his clean disciplinary record and the City's failure to impose such severe punishment for what the arbitrator found to be similar acts of misconduct. Regardless of whether we agree with this assessment, we are not at liberty to overturn it. As we explained above, a court has no authority to reject an arbitrator's findings even if it disagrees with his reading of the CBA and his legal and factual conclusions. See, e.g., United Paperworkers,484 U.S. at 38. In our view, the arbitrator's award is not so far afield that it can be said he exceeded his powers, or so imperfectly executed them, that a mutual, final, and definite award was not made.[2]
 {¶ 21} We also disagree with the trial court's finding that the arbitrator exceeded his authority by imposing a non-existent due process requirement on the City and ordering Milem reinstated due to a perceived violation of that requirement. This issue stems from the arbitrator's observation that "[n]o documentation indicates the Grievant or the Union was advised that the Employer was considering summary discharge as an appropriate discipline for the Grievant's rule infraction on May 9, 2003." The trial court found that any inadequacy of due process was not an issue submitted to the arbitrator. A review of the arbitrator's ruling, however, persuades us that he addressed the question of notice as part of his just-cause analysis — an issue that was properly before him. See, e.g., United Paperworkers, 484 U.S. at 34 n. 5 (recognizing that analysis of the just-cause issue involves consideration of several criteria, including "the notice given to the employee"). Once again, even if we were to disagree with the arbitrator on the merits of the notice question, his treatment of the issue was in the context of evaluating just cause and, therefore, drew its essence from the CBA. As a result, we are not free to reject the arbitrator's conclusion.
 {¶ 22} We reach the same conclusion about the arbitrator's comparison of Milem's punishment to the sanctions imposed in what the arbitrator perceived as similar cases. In its decision, the trial court concluded that Milem's discharge did not constitute disparate treatment because the instances of misconduct by other employees were plainly distinguishable. In our view, however, the similarity or dissimilarity of Milem's actions to those of other employees who were punished less severely was a largely factual matter for the arbitrator to decide. It is undisputed that the City's personnel policies call for "consistent" discipline, which "means that the penalties are similar under similar circumstances." The City's own personnel policies also recognize that the determination of what is "similar" requires judgment on the part of management. We find this to be equally true with regard to the arbitrator's assessment of Milem's misconduct vis-a-vis the infractions of other employees. Thus, even if we accept the trial court's opinion that Milem's conduct was distinguishable, we nevertheless reject its conclusion that the arbitrator exceeded or so imperfectly executed his authority such that vacation of his award is warranted under R.C. § 2711.10(D).
 {¶ 23} We also disagree with the trial court's finding that Milem's reinstatement violates public policy embodied in R.C. §2909.23, which punishes making a "terroristic threat" as a third-degree felony. "A court may refuse to enforce an [arbitration] award when specific terms in the contract would violate public policy, but there is no broad power to set aside an arbitration award as against public policy." Board of CountyComm'rs v. L. Robert Kimball and Assoc. (6th Cir. 1988),860 F.2d 683, 686. The issue is not whether Milem's misconduct violated some public policy, but whether the arbitrator's reinstatement order did so. Southwest Ohio Regional TransitAuth., 91 Ohio St.3d at 112-113, 2001-Ohio-294; see alsoEastern Associated Coal Corp. v. United Mine Workers of America,Dist. 17 (2000), 531 U.S. 57, 62-63 ("[T]he question to be answered is not whether Smith's drug use itself violates public policy, but whether the agreement to reinstate him does so."). Moreover, a court may not refuse to enforce an arbitration award for violating public policy unless the public policy at issue is well defined and dominant, being "ascertained `by reference to the laws and legal precedents and not from general considerations of supposed public interests.'" United Paperworkers,484 U.S. at 43, quoting Muschany v. United States (1945), 324 U.S. 49,66.
 {¶ 24} The statute cited by the trial court, R.C. § 2909.23, provides in part:
 {¶ 25} "(A) No person shall threaten to commit or threaten to cause to be committed a specified offense when * * *:
 {¶ 26} "(1) The person makes the threat with purpose to do any of the following:
 {¶ 27} "(a) Intimidate or coerce a civilian population;
 {¶ 28} "(b) Influence the policy of any government by intimidation or coercion;
 {¶ 29} "(c) Affect the conduct of any government by the threat or by the specified offense.[3] * * *".
 {¶ 30} For present purposes, we do not dispute that this statute embodies a public policy against terroristic threats. It is far from clear, however, whether Milem's conduct — which the arbitrator characterized as merely being in "bad taste" and showing "poor judgment" — qualifies as a terroristic threat under the statute. Even assuming, arguendo, that it does, we stress again that the issue is not whether Milem's conduct violates the public policy found in the statute but whether thearbitration award ordering his reinstatement with a thirty-day suspension violates the public policy reflected in R.C. § 2902.23. Southwest Ohio Regional Transit Auth.,91 Ohio St.3d at 112-113, 2001-Ohio-294; Eastern Associated Coal Corp.,531 U.S. at 62-63.
 {¶ 31} Although making terroristic threats may violate explicit and well defined public policy found in R.C. § 2909.23, we are unpersuaded that suspending rather than discharging an employee who arguably makes such a threat through the exercise of poor judgment also violates explicit public policy. The record fails to establish that Milem, who had no prior disciplinary record, is likely to violate the statute again if he is reinstated. We note too that the statute neither requires termination or precludes reinstatement of an employee such as Milem. Thus, we see no public policy emanating from the statute that would preclude the arbitrator from giving Milem another chance following a thirty-day suspension.
 {¶ 32} Finally, we conclude that the arbitrator acted within the scope of his power and discretion when he found a thirty-day suspension to be the appropriate punishment. It is well settled that "[a]n arbitrator has broad authority to fashion a remedy" when a CBA violation has occurred. Queen City Lodge No. 69 v.City of Cincinnati (1992), 63 Ohio St.3d 403, 407; see alsoBoard of Trustees of Miami Twp., 81 Ohio St.3d at 273,1998-Ohio-629. In the present case, the applicable policies and rules identify a suspension as a possible punishment for misconduct of the type at issue. In addition, Article 2 of the CBA authorizes the imposition of a suspension for just cause. Thus, the arbitrator's award ordering Milem reinstated with back pay minus a thirty-day suspension draws its essence from the CBA and is not subject to being vacated.
 III. Conclusion {¶ 33} Based on the reasoning set forth above, we hereby sustain AFSCME's assignment of error. The trial court's judgment is reversed, and the cause is remanded for confirmation of the arbitration award.
Fain, J., and Grady, J., concur.
[1] There is no suggestion by the City of Dayton or the trial court that any other subsection of R.C. § 2711.10 is relevant here. The other subsections address the vacation of an arbitration award when the arbitration process is tainted by corruption, fraud, partiality, or misconduct.
[2] On appeal, the parties vigorously debate the arbitrator's finding that the City was required to adhere to a progressive discipline policy when punishing Milem. We believe, however, that they view this issue as more important than it is. Regardless of whether progressive discipline was required, the essence of the arbitrator's decision is that discipline less severe than discharge was appropriate in this case. As explained above, the arbitrator reached this conclusion largely by reviewing Milem's clean prior disciplinary record and the punishment imposed in what were perceived to be similar cases. Thus, regardless of whether the City generally had to follow a progressive discipline policy, the central issue before us is whether the arbitrator exceeded his authority in finding that the City should have imposed only a thirty-day suspension in this case.
[3] The "specified offenses" mentioned in R.C. § 2909.23(A) are found in R.C. § 2909.21(E) and include "[a] felony offense of violence[.]" Although the trial court did not say so, the "specified offense" implicated by Milem's computer message presumably would be murder.