JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Cuyahoga Metropolitan Housing Authority ("CMHA") appeals from the order of the trial court that confirmed an arbitrator's reinstatement of employee Alvin Roan. For the reasons set forth below, we affirm.
 {¶ 2} CMHA and Service Employees International Union ("SEIU"), Local 47, as the representative of maintenance employees including Roan, entered into a collective bargaining agreement for the period beginning in July 2002 and ending in June 2005. In relevant part the agreement provided that CMHA could suspend, discipline, demote, or terminate employees for "just cause." Termination is subject to arbitration and the arbitrator is permitted to interpret and apply the agreement but has no authority to:
 {¶ 3} "(1) add to or subtract from, or modify in any way the provisions of [the] Agreement, (2) pass upon issues governed by law; and (3) make an award in conflict with law."
 {¶ 4} Roan was hired by CMHA in January 2004 and became a member of SEIU Local 47. He worked as a Service Person II in the plumbing department at CMHA and traveled to various CMHA housing locations in connection with his employment. He was permitted to drive CMHA vehicles and was given a credit card and employee personal identification number ("PIN number") to be used for purchasing fuel. The card tracked the employee, the vehicle and the time, date, *Page 4 
location, and amount of the fuel purchase. Employees were warned, however, as follows:
"RESPONSIBILITY
 {¶ 5} "The primary responsibility for the security of vehicle keys and gas cards is with the department supervisor, whose staff uses the keys and gas cards. * * * Individually assigned gas cards are individually assigned `Personnel Identification Numbers' to each user of the gas card for that vehicle. The gas cards are only allowed to purchase regular unleaded fuel and diesel fuel. These cards are for fuel purchases only, and not to be used for any other expenditure. It's the supervisor's responsibility to monitor and review the gas card purchase monthly. A list of expenditures will be provided to management monthly for each assigned gas card. It's management's responsibility to sign off on assigned gas card purchases monthly. Any person found in violation of the outline[d] procedures will be subject to disciplinary action, up to and including termination.
"PERSONAL IDENTIFICATION NUMBER
 {¶ 6} "* * * Supervisors must maintain a log of gas purchases made by employee. * * *
"SECURITY OF VEHICLE AND EQUIPMENT
 {¶ 7} "Personnel * * * must request keys and gas cards through their department director or supervisor. Individuals granted these privileges must assume personal responsibility for keys and gas cards during the time they are using them. *Page 5 
The department or property is required to maintain a control log that show[s] who signed out what vehicle, or equipment, gas card, and when it was returned. Should employee or staff member require access to a particular vehicle after normal working hours presentation of identification to our Police or any responsible supervisor may be requested.
"TRANSFER OF KEYS/GAS CARDS
 {¶ 8} "Employee shall not loan or transfer keys/gas card to anyone. The person to whom a key/gas card has been issued shall be responsible for the use of that key/gas card until it has been properly returned to the person who is in charge of the control logs.
"POSSESSION OF UNAUTHORIZED KEYS OR GAS CARDS
 {¶ 9} "Any person found to be in possession of an unauthorized key or gas card is subject to disciplinary or legal action."
 {¶ 10} On July 20, 2004, Roan used the CMHA gas card to purchase 23.69 gallons of gasoline, purportedly for a Dodge Ram owned by CMHA. This purchase occurred prior to the start of the shift. On August 3, 2003, Roan purchased 20.53 gallons of gas, purportedly for a Corsica owned by CMHA. This quantity of gas purchased exceeded the tank capacity for the CMHA vehicle and an incorrect odometer reading was given.
 {¶ 11} CMHA terminated Roan for conversion of property. The termination was the subject of a union grievance, and the matter proceeded to arbitration. The *Page 6 
arbitrator noted that employees sometimes used PIN numbers for other employees if their own did not work, not every vehicle has a gas card and that employees would, if necessary, take the gas card from another vehicle to purchase fuel. In addition, employees use various gasoline powered implements but there is no gas card for purchasing gas for such tools. In determining that CMHA lacked just cause, the arbitrator concluded that there was no evidence to contravene Roan's claim that he drove in from his girlfriend's house in Avon, no evidence to dispute Roan's claim that he reported to work early and fueled the vehicle before clocking in and no evidence as to what kind of vehicle Roan has. On appeal to the court of common pleas, CMHA asserted that the award departed from the essence of the collective bargaining agreement, lacked "rational support," contravened public policy and was the result of partiality. The trial court confirmed the arbitrator's decision and CMHA now appeals assigning four interrelated errors for our review.
 {¶ 12} Within its assignments of error CMHA contends that the trial court erred in denying its motion to vacate the arbitration award because the decision was rendered in disregard for the law and the evidence, the arbitrator exceeded his authority by committing a gross procedural impropriety, demonstrated partiality and bias in favor of Roan and against CMHA, and violated the public trust.
 {¶ 13} In reviewing an arbitration award, "the standard of review is very narrow and the courts must therefore award the arbitrator's decision substantial deference." Painesville City Local Schs. Bd. ofEduc. v. Ohio Ass'n of Pub. Sch. Employees, *Page 7 
Lake App. No. 2005-L-100, 2006 Ohio 3645. An arbitrator's decision should not be vacated or modified, unless the arbitrator exceeded his or her authority or absent any of the circumstances in R.C. Chapter 2711, "such as fraud, misconduct, partiality, or material mistake." Queen CityLodge No. 69, Fraternal Order of Police of Hamilton County Ohio, Inc. v.Cincinnati (1992), 63 Ohio St. 3d 403, 407, 588 N.E.2d 802. See also,Dayton v. Fraternal Order of Police (1991), 76 Ohio App.3d 591, 597,602 N.E.2d 743 (an appellate court "may not pass on the substantive merits of the arbitration award absent evidence of material mistake or extensive impropriety.")
 {¶ 14} In determining whether an arbitrator has exceeded his or her authority, a reviewing court will uphold the award if it "`draws its essence' from the collective bargaining agreement and is not merely the arbitrator's `own brand of industrial justice.'" Gen. Truck Drivers,Chauffeurs, Warehousemen Helpers, Local No. 957 v. Dayton Newspapers,Inc. (C.A.6 1999), 190 F.3d 434, 437 (citations omitted). An arbitrator's award is found to depart from the essence of the collective bargaining agreement when (1) it conflicts with the express terms of the agreement, and/or (2) the award lacks rational support or cannot be rationally derived from the agreement's terms. Ohio Office of CollectiveBargaining v. Civil Service Emps. Assn., Local 11 (1991),59 Ohio St.3d 177, 572 N.E.2d 71, at the syllabus.
 {¶ 15} Under R.C. 2711.10, a court must vacate an award derived from corruption, fraud, or undue means, partiality or corruption, misconduct, refusal to hear material and pertinent evidence, or by any other prejudicial misbehavior, or *Page 8 
imperfect execution of powers which results in an award which is not final, mutual and definite. R.C. 2711.10.
 {¶ 16} Finally, we note that in Bd. of Trustees of Miami Twp. v.Fraternal Order of Police, Ohio Labor Council, Inc. (1998),81 Ohio St.3d 269, 271-272, 1998-Ohio-629, 690 N.E.2d 1262, the court stated, the following with regard to just cause for discipline:
 {¶ 17} "(1) whether a cause for discipline exists and (2) whether the amount of discipline was proper under the circumstances."
 {¶ 18} In this matter, CMHA's records indicated that approximately one hour before the beginning of his shift on July 20, 2004, Roan used the CMHA gas card to purchase 23.69 gallons of gasoline, purportedly for a Dodge Ram owned by CMHA. This purchase appears spurious because it occurred prior to the start of the shift. We note, however, that there is nothing in the written regulations provided to the employee which would prohibit such conduct, no evidence was presented to establish that Roan actually purchased gas for a non-CMHA owned vehicle (i.e., no witnesses or photographs, etc.) and no evidence to demonstrate that the CMHA-owed Dodge Ram was actually elsewhere at the time of the gas purchase or that Roan lacked authority to use the truck at this time.
 {¶ 19} CMHA's further demonstrated that on August 3, 2003, Roan purchased 20.53 gallons of gas, purportedly for a Corsica owned by CMHA. This purchase seems spurious because the quantity of gas purchased exceeded the tank capacity *Page 9 
for the CMHA vehicle and an incorrect odometer reading was given. We note, however, that there was additional evidence that employees use a five-gallon gas container to fill their gas-powered equipment and that they do not use a separate card for these purchases. Similarly, although the listed mileage for the vehicle at the time of the purchase appeared to be inaccurate, the rules did not outline any employee obligations with regard to noting correct mileage.
 {¶ 20} On this record, therefore, and in light of the regulations as presently constituted, we cannot say that CMHA sufficiently established just cause for termination. We therefore reject CMHA's contention that the arbitrator's decision was rendered in disregard for the law and the evidence. From the transcript provided, we cannot say that the award departed from the essence of the collective bargaining agreement. Likewise, the deficiencies of proof and record-keeping pertaining to the use of the cards and the vehicles preclude us from determining that the award was in conflict with the express terms of the agreement, or that it lacked rational support.
 {¶ 21} As to CMHA's contention that the arbitrator exceeded his authority by committing a gross procedural impropriety required CMHA to present evidence to refute Roan's claims. We do not agree with this claim. Our review of the decision indicates that the arbitrator simply cited to the issues created within Roan's explanations to highlight the various failures of proof. *Page 10 
 {¶ 22} As to CMHA's claim that there is circumstantial evidence that the arbitrator was biased, in favor of Roan, we have reviewed the record and find no evidence of partiality or misconduct.
 {¶ 23} Finally, as to CMHA's claim that the arbitrator's award contravened public policy since Roan violated the public trust, we note that although Roan's conduct was questionable on the two stated instances, it was not clearly established that he misused the cards entrusted to him.
Affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE, JUDGE
 PATRICIA ANN BLACKMON, J., and MARY J. BOYLE, J., CONCUR *Page 1