THE STATE EX REL. WEBB *v.* BLISS, CLERK.

[Cite as *State ex rel. Webb v. Bliss,*
99 Ohio St.3d 166, 2003-Ohio-3049.]

(No. 2002–2128—Submitted May 13, 2003—Decided June 25, 2003.)

**Per Curiam.**

{¶ 1} On October 7, 2002, the Geneva on the Lake Village Council enacted Ordinance No. 1165, which rezones a 45–acre parcel of land from Seasonal Residential One Family ("SR1F") to Retail Business Recreational Resort ("RBRR"). In Section II of the ordinance, the village council declared Ordinance No. 1165 to be an emergency measure:

{¶ 2} "For the reasons stated in the preamble herein, this Ordinance is hereby declared to be an emergency measure which is necessary for the proper regulation and use of lands within the Village of Geneva on the Lake, and further for the reasons that this particular parcel of land is more properly classified and consistent with the Retail Business–Recreational–Resort (RBRR) classification." In the preamble of the ordinance, the village council determined that "reclassification would be beneficial and would promote the public health, safety, and the economic interest of the community." Further, the landowner's zoning request was "not inconsistent with the permitted uses as set forth in the Geneva on the Lake Zoning Code and the general plan of development of the Village of Geneva on the Lake, Ohio." The preamble also included a brief account of the zoning history of the property.

{¶ 3} After the passage of the ordinance, relator, Keith Webb, filed a copy of the ordinance with respondent, Village of Geneva on the Lake Clerk Margaret Bliss, before circulating a referendum petition on the ordinance. A committee circulated the referendum petition requesting that Ordinance No. 1165 be submitted to the village electorate at the November 4, 2003 general election.

{¶ 4} On November 4, 2002, Webb delivered the petition, which contained 78 signatures, to Bliss. The number of signatures exceeded ten percent of the village electors who voted at the last election for governor. On November 11, 2002, Bliss advised Webb that she would take no further action on the referendum petition because Ordinance No. 1165 was not subject to referendum under R.C. 731.30, since it was passed as an emergency ordinance.

{¶ 5} On December 12, 2002, Webb filed this action for a writ of mandamus to compel Bliss to transfer the referendum petition and the ordinance to the Ashtabula County Board of Elections in accordance with R.C. 731.29. On

January 2, 2003, Bliss filed an answer and a motion for judgment on the pleadings.

{¶ 6} After we granted an alternative writ, 98 Ohio St.3d 1458, 2003-Ohio-644, 783 N.E.2d 518, the parties filed evidence and briefs. In an affidavit, Bliss stated that the village council passed the ordinance as an emergency measure only after the council had considered the ordinance for seven months. Bliss further stated that if the ordinance had been placed on the general election ballot, the village would have been deprived of the increased revenue resulting from development of the property as a recreational and resort property. Bliss also noted that rezoning conformed with the council's general plan for developing the village as a resort and recreational community. Bliss stated that the village's economy is greatly dependent on recreation and tourism.

{¶ 7} This cause is now before the court for our S.Ct.Prac.R. X(5) determination.

{¶ 8} Webb seeks a writ of mandamus to compel Bliss to transfer the petition and a certified copy of Ordinance No. 1165 to the board of elections. In order to be entitled to the requested writ, Webb has to establish a clear legal right to have Bliss transmit the petition and a certified copy of Ordinance No. 1165 to the board of elections, a corresponding clear legal duty by Bliss to do so, and the lack of an adequate remedy in the ordinary course of law. *State ex rel. Commt. for the Charter Amendment, City Trash Collection v. Westlake*, 97 Ohio St.3d 100, 2002-Ohio-5302, 776 N.E.2d 1041, ¶ 21.

{¶ 9} Regarding the first two requirements for a writ of mandamus, the applicable statute, R.C. 731.29, imposes a duty on a city auditor or village clerk to transmit to the board of elections a referendum petition and a certified copy of the ordinance that is the subject of the petition:

{¶ 10} "When a petition, signed by ten per cent of the number of electors * * *, is filed with the city auditor or village clerk within thirty days after any ordinance or other measure is filed with the mayor or passed by the legislative authority of a village * * * ordering that such ordinance or measure be submitted to the electors of such municipal corporation for their approval or rejection, *such auditor or clerk shall, after ten days, and not later than four p.m. of the seventy-fifth day before the day of the election, transmit a certified copy of the text of the ordinance or measure to the board of elections. The auditor or clerk shall transmit the petition to the board together with the certified copy of the ordinance or measure.*" (Emphasis added.)

{¶ 11} Bliss refused to transmit the petition and Ordinance No. 1165 to the board of elections because it was passed as an emergency ordinance. Under R.C. 731.29, all ordinances are subject to referendum "except as provided by" R.C. 731.30. R.C. 731.30 provides that emergency ordinances "shall go into immediate

effect," thereby exempting them from referendum. R.C. 731.30 defines "emergency ordinances" as those "ordinances or measures necessary for the immediate preservation of the public peace, health, or safety in such municipal corporation * * *. Such emergency ordinances or measures must, upon a yea or nay vote, receive a two-thirds vote of all the members elected to the legislative authority, and *the reasons for such necessity shall be set forth in one section of the ordinance or other measure.*" (Emphasis added.)

{¶ 12} We have recognized that "[w]here an ordinance, passed by the council of a municipality, is declared to be an emergency * * * and sets forth the reasons for the immediate necessity thereof, the legislative determination of the existence of an emergency is not reviewable by a court." *Jurcisin v. Cuyahoga Cty. Bd. of Elections* (1988), 35 Ohio St.3d 137, 519 N.E.2d 347, paragraph three of the syllabus.

{¶ 13} The rationale for the R.C. 731.30 requirement of stating reasons for declaring an emergency is to satisfy voters that their representatives had valid reasons to declare that the ordinance was an emergency, and " '[i]f there was in fact no emergency or if the reasons given for such necessity are not valid reasons, the voters have an opportunity to take appropriate action in the subsequent election of their representatives.' " *State ex rel. Moore v. Abrams* (1991), 62 Ohio St.3d 130, 132, 580 N.E.2d 11, quoting *State ex rel. Fostoria v. King* (1950), 154 Ohio St. 213, 220–221, 43 O.O. 1, 94 N.E.2d 697.

{¶ 14} Nevertheless, the statutory duty to set forth reasons for an emergency in an ordinance is mandatory. Hence, the failure to do so, for example, by including purely conclusory, tautological, or illusory language in the emergency measure fails to meet the R.C. 731.30 requirements for a valid emergency ordinance. *State ex rel. Waldick v. Williams* (1995), 74 Ohio St.3d 192, 195, 658 N.E.2d 241; *Moore,* 62 Ohio St.3d at 132–133, 580 N.E.2d 11.

{¶ 15} Therefore, the dispositive issue is whether Ordinance No. 1165 sufficiently sets forth the reasons for its passage as an emergency measure. For the following reasons, we hold that it does not and that Ordinance No. 1165 is consequently subject to referendum.

{¶ 16} Ordinance No. 1165 initially directs the reader to the preamble for reasons why the village council declared it to be an emergency. The preamble, however, specifies merely that the zoning reclassification provided by the ordinance "would be beneficial and would promote the public health, safety, and the economic interest of the community."

{¶ 17} We have held that comparable language is insufficient to justify the declaration of an emergency. See *Youngstown v. Aiello* (1951), 156 Ohio St. 32, 45 O.O. 45, 100 N.E.2d 62, paragraph three of the syllabus (emergency clause reciting that ordinance was necessary to preserve the public peace, health, and

safety lacked validity as an emergency enactment entitled to immediate effect); see, also, *Walsh v. Cincinnati City Council* (1977), 54 Ohio App.2d 107, 110, 8 O.O.3d 208, 375 N.E.2d 811.

{¶ 18} Bliss further claims that the ordinance provides two additional reasons justifying the village council's declaration of an emergency: (1) the proper regulation and use of lands within the village, and (2) the parcel of land being rezoned is more properly classified and consistent with the RBRR zoning classification. These reasons, however, could be broadly applied to *any* zoning change.

{¶ 19} Bliss relies on cases that upheld the validity of emergency ordinances that contained more detailed emergency declarations than those in Ordinance No. 1165. Cf. *Jurcisin*, 35 Ohio St.3d at 137, 519 N.E.2d 347 (preamble stated that ordinance had to be certified to the election authorities immediately *in order for the proposed charter amendment to appear on election ballot*); *Moore*, 62 Ohio St.3d at 131–132, 580 N.E.2d 11 (preamble stated that ordinance was necessary to proceed with improvement program requiring immediate action because the time was "well into" the construction season); *State ex rel. Lipovsky v. Kizak* (1968), 15 Ohio St.2d 27, 29, 44 O.O.2d 16, 238 N.E.2d 777 (ordinance declared that it provided for the "immediate levying of a municipal income tax in order to obtain essential revenue for the functions of the village government"); *Materkowski v. Belmont Cty. Bd. of Elections*, Belmont App. No. 02 BE 34, 2002-Ohio-4370, 2002 WL 1965294 (ordinance declared that it established "position of a necessary employee").

{¶ 20} Conversely, the language in Ordinance No. 1165 contains no viable reason to· exempt the rezoning from the electorate's constitutional right of referendum. In *Snyder v. Bowling Green* (Dec. 13, 1996), Wood App. No. WD–96–036, 1996 WL 715426, the court of appeals invalidated a zoning ordinance as an emergency when the ordinance merely stated that "the prompt effectiveness of zoning measures [is] necessary to provide appropriate zoning for property in the City and thereby protect the public health, safety and well-being of our citizens." Like the ordinance in *Snyder*, the zoning ordinance here contains only conclusory statements that fail to apprise voters of any specific reasons to declare the ordinance to be an emergency.

{¶ 21} Furthermore, this construction of the emergency clause of Ordinance No. 1165 and R.C. 731.29 and 731.30 is consistent with our duty to liberally construe provisions for municipal referendum in favor of the power reserved so as to permit rather than preclude referenda. See *State ex rel. Rose v. Lorain Cty. Bd. of Elections* (2000), 90 Ohio St.3d 229, 230–231, 736 N.E.2d 886.

{¶ 22} In addition, Bliss's construction of the pertinent statutes would permit the village council to prevent the electorate from exercising their constitutional

right to referendum based on generalized reasons that could apply to *any* zoning change. We will not approve this absurd result. See *State ex rel. Miles v. McSweeney*, 96 Ohio St.3d 352, 2002-Ohio-4455, 775 N.E.2d 468, ¶ 24 (court has duty to construe statutes and charters to avoid unreasonable or absurd results). As one appellate court cogently observed, "to allow Council to merely parrot a generalized, conclusory phrase which could be applied to virtually any ordinance sought to be enacted, and doing this without requiring Council to specify the reasons why this particular ordinance is itself of an emergency nature, would in effect be permitting Council to deprive the electorate of their constitutional and statutory right to have a referendum vote on a matter of widespread public concern." *State ex rel. Luff v. Sommer* (July 30, 1981), Summit App. No. 10169, 1981 WL 4089. Notably, the reasons that Bliss now presents as after-the-fact justifications for the passage of the ordinance as an emergency, e.g., the village's great dependence on revenue from recreation and tourism and the loss of this revenue if a referendum is allowed, *were not contained in the ordinance.*

{¶ 23} Moreover, Webb lacks an adequate remedy in the ordinary course of the law. A declaratory judgment would not be a complete remedy unless coupled with extraordinary ancillary relief in the nature of a mandatory injunction to compel Bliss to comply with R.C. 731.29. See *State ex rel. Mill Creek Metro. Park Dist. Bd. of Commrs. v. Tablack* (1999), 86 Ohio St.3d 293, 297, 714 N.E.2d 917. And courts have recognized the propriety of mandamus in these cases. See, e.g., *State ex rel. Emrick v. Wasson* (1990), 62 Ohio App.3d 498, 576 N.E.2d 814; *Luff,* supra.

{¶ 24} Therefore, Webb has established his entitlement to the writ. Accordingly, we grant a writ of mandamus to compel Bliss to transmit the referendum petition and a certified copy of the ordinance to the board of elections.

Writ granted.

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, LUNDBERG STRATTON and O'CONNOR, JJ., concur.

O'DONNELL, J., not participating.

———————

Berns, Ockner & Greenberger, L.L.C., Sheldon Berns and Benjamin J. Ockner, for relator.

Hahn, Loeser & Parks, L.L.P., Stephen E. Chappelear and Anthony J. Miller, for respondent.