**TRUMAN, Appellant,**

v.

**VILLAGE OF CLAY CENTER et al., Appellees.**

[Cite as *Truman v. Village of Clay Ctr.,* 160 Ohio App.3d 78, 2005-Ohio-1385.]

Court of Appeals of Ohio,
Sixth District, Ottawa County.

No. OT–04–023.

Decided March 25, 2005.

Richard R. Gillum, for appellant.

Rahn Huffstutler, for appellees village of Clay Center and Richard Iffland.

James R. Jeffery and Teresa L. Grigsby, for appellee White Rock Quarry.

---

SKOW, Judge.

{¶ 1} Appellant, Joan Truman, appeals the decision of the Ottawa County Court of Common Pleas that awarded summary judgment to appellees, the village of Clay Center, White Rock, Inc., and Richard Iffland, the village clerk of Clay Center. For the following reasons, we reverse.

{¶ 2} White Rock owns the parcel at issue, a 93–acre tract of land. When White Rock purchased the parcel, a portion of the parcel lay within Clay Center and the remainder lay within Allen Township. White Rock petitioned Clay Center to annex the entire parcel to Clay Center, and the annexation was subsequently approved. According to the applicable Clay Center zoning regulations, parcels of land annexed to Clay Center are automatically designated as residentially zoned. Wishing to conduct quarrying operations on the parcel, White Rock petitioned the Clay Center Zoning Commission to rezone the parcel from residential to manufacturing class. Appellant's residential property lies near the parcel.

{¶ 3} On January 6, 2003, the Clay Center Zoning Commission approved White Rock's petition and recommended to the Clay Center Council that the parcel be rezoned for quarrying. On March 10, 2003, the council held a public hearing on White Rock's request to ratify the zoning commission's recommendation. A group of citizens from both Clay Center and Allen Township, including appellant, attended the hearing and expressed their opposition to the rezoning. After the hearing, the council, on motion, voted unanimously to accept the zoning board's

recommendation. The council took no other action at that meeting aside from approving the motion.

{¶ 4} On April 7, 2003, appellant filed suit in the Ottawa County Court of Common Pleas against White Rock and Clay Center, requesting (1) a declaratory judgment that the council's motion to accept the zoning commission's recommendations was an illegal and void zoning change, since an ordinance was required to change zoning, and (2) injunctive relief barring Clay Center from officially rezoning the parcel for manufacturing and barring White Rock from commencing quarrying operations. Since passing an ordinance is a legislative act subject to referendum, and the council vote to approve the zoning change did not constitute an ordinance, appellant filed her initial complaint as an administrative appeal.

{¶ 5} In response, the council passed Ordinance 3–2003 on June 9, 2003.[1] That day was a regular council meeting day, and no public notice was given of council's intent to pass this particular ordinance during this meeting. The council drafted the ordinance as an emergency ordinance, pursuant to R.C. 731.30; this statute requires ordinances to contain a section justifying the necessity for an emergency designation. Ordinance 3–2003 states as its justification, "[T]his Ordinance is hereby declared to be an emergency measure and shall take effect and be in from and after its passage [sic]. The reason for the emergency lies in the fact that this is necessary for the immediate preservation of the public welfare, and for the particular reason that this ordinance is immediately necessary for the public welfare adequate police power for said territory [sic]."

{¶ 6} Pursuant to R.C. 731.29, emergency ordinances may not be challenged by referendum. Regardless, appellant proceeded to prepare a referendum petition to place Ordinance 3–2003 on the November 2004 ballot, including gathering the required electors' signatures, as if the ordinance were not an emergency ordinance and thus challengeable by referendum.

{¶ 7} In order to place a referendum on a ballot, a petition must comply with R.C. 731.29 et seq., which governs how referendum petitions must be filed, what petitions must contain, and the procedures governing petitions. Most relevant here is the statute's requirement that a referendum petition be filed with the city auditor or the village clerk within 30 days of the contested ordinance's passage.

{¶ 8} On July 8, 2003, 29 days after the council passed Ordinance 3–2003, appellant went to Clay Center's town hall in order to file the referendum petition with Iffland, Clay Center's village clerk. Clay Center's town hall shares building space with the local fire department, and it contains the Clay Center office, which

---

1. Merle Fondessy, president of Clay Center's council, admitted in a deposition that the council passed Ordinance 3–2003 in response to appellant's suit and in order to allow White Rock to begin quarrying operations.

includes the Clay Center clerk's office. Iffland testified that there is no separate office or room from which he conducts his duties as clerk; rather, he has a desk inside the single office for Clay Center. Appellant testified that the Clay Center office door was closed and locked when she first arrived that morning. Later that same morning, appellant returned to the office and encountered Merle Fondessy, the president of the council and a member of the Clay Center Zoning Commission. Fondessy testified that he had opened the office to make photocopies. Appellant asked Fondessy whether and when Iffland would return. Fondessy told appellant that he expected Iffland to return at some point later in the day, but he told appellant he could not specify a time. Fondessy testified that appellant did not offer to file anything with him or the office but that she asked only when Iffland would be in the office. Fondessy did not offer to help appellant with anything.

{¶ 9} According to appellant's testimony, after the encounter with Fondessy, she returned to the office on July 8 about once every hour, for a total of "six to seven times," and each time she found the Clay Center office closed and locked.

{¶ 10} On the 13th and last day to timely file the petition, July 9, 2003, appellant returned to the Clay Center office to file the petition with Iffland. Early that morning, appellant found the office door locked. She returned to the office throughout the day, "approximately every hour looking for [Iffland]," and she found the office door locked each time. At approximately 3:00 p.m., intent on filing the petition with someone, appellant telephoned both Iffland and Fondessy at their homes. No one answered. She also telephoned the Clay Center mayor; he was not home. She drove to Iffland's and Fondessy's homes and knocked on their doors, and no one answered. She returned to the Clay Center office again and found it locked. Appellant then went to the post office, which is immediately adjacent to the Clay Center office. Appellant asked the postal clerk to "certify" the petition to Iffland on that date. The clerk refused her request to certify the petition; instead, the postal clerk suggested she sign a certified mail ticket. Appellant filled out the certified mail ticket to Iffland, attached it to the referendum petition, and the postal clerk stamped it. Since Iffland's mailbox was in the post office, the clerk then immediately placed the petition in Iffland's mailbox. Iffland testified that he received all official mail for Clay Center in this mailbox. On the morning of July 10, 2003, one day after the 30–day filing deadline, Iffland received the mail from the post office mailbox and signed the certified mail receipt.

{¶ 11} Iffland testified that he thought the petition was late when he received it. Therefore, he informed appellant that he could not accept the petition.

{¶ 12} Appellant then amended her initial complaint at the trial court to include Iffland as a party and added a claim for a writ of mandamus, asking the court to

compel Iffland and the council to accept the referendum petition as filed and certify it to the board of elections. After some discovery, all parties moved for summary judgment.

{¶ 13} In its opinion, the trial court granted summary judgment to Clay Center, White Rock, and Iffland and dismissed appellant's claims. The trial court found that Ordinance 3–2003 failed to meet the statutory requirements for a valid emergency ordinance and was therefore subject to challenge by referendum. The trial court then held that appellant filed the referendum petition after the required 30–day deadline, and thus the petition was time-barred. The trial court reasoned that since election laws require strict compliance, appellant's efforts to file the petition with Iffland on July 9 were irrelevant to a determination that the petition was untimely filed.

{¶ 14} In this appeal, appellant raises the following assignment of error:

{¶ 15} "I. The trial court erred in relying on *State ex. rel. Committee for the Proposed Ordinance to Repeal Ordinance No. 146–02 v. City of Lakewood* (2003) 100 Ohio St.3d 252 [798 N.E.2d 362], and failing to apply R.C. 1.14 and the law regarding referendum petitions, by not liberally construing the facts in favor of the fundamental right of referendum."

{¶ 16} Although a city auditor or a village clerk has discretion as to whether to certify a referendum petition, the exercise of that discretion is not final. *State ex rel. Kahle v. Rupert* (1918), 99 Ohio St. 17, 122 N.E. 39. A writ of mandamus will lie to compel the auditor or clerk to act when the petitioner has demonstrated (1) a clear legal right to have the petition transmitted to the board of elections, (2) a corresponding clear legal duty of the auditor or clerk to do so, and (3) the lack of an adequate remedy in the ordinary course of law. *State ex rel. Webb v. Bliss* (2003), 99 Ohio St.3d 166, 168, 2003-Ohio-3049, 789 N.E.2d 1102. When an appellate court reviews a denial of a writ of mandamus, the standard of review employed is abuse of discretion. *State ex rel. Hrelec v. Campbell* (2001), 146 Ohio App.3d 112, 117, 765 N.E.2d 402, citing *State ex rel. Ney v. Niehaus* (1987), 33 Ohio St.3d 118, 515 N.E.2d 914. "This standard requires more than a determination by the reviewing court that there was an error of judgment, but rather that the trial court acted unreasonably, arbitrarily, or unconscionably." Id. "A writ may issue to compel performance of a ministerial act, to compel the exercise of discretion, or to correct a gross abuse of discretion." *State ex rel. Watkins v. Quirk* (1978), 59 Ohio App.2d 175, 179, 13 O.O.3d 202, 392 N.E.2d 1302.

{¶ 17} Before addressing appellant's assignment of error, we briefly note that both Clay Center and White Rock raise arguments regarding the correctness of the trial court's ruling that Clay Center failed to validly enact the

ordinance as an emergency ordinance and that appellant should therefore not be barred from filing a referendum petition. Appellees did not file a cross-appeal asserting their argument as an assignment of error. App.R. 3(C). Thus, we may not address this argument, and the trial court's ruling on this issue stands on appeal. Since the ordinance is subject to referendum, the only question before us is whether Iffland should be compelled to accept the referendum petition as timely filed.

{¶ 18} Appellant does not dispute that July 10, the day on which Iffland signed the certified mail receipt for the petition, is one day past the required 30–day filing deadline for referendum petitions pursuant to R.C. 731.29. Appellant points, however, to R.C. 1.14, which provides a one-day "grace period" for the filing of documents with any public office when the deadline falls on a day on which the office is closed. That statute states:

{¶ 19} "When a public office in which an act, required by law, is to be performed is closed to the public for the entire day that constitutes the last day for doing the act or before its usual closing time on that day, the act may be performed on the next succeeding day that is not a Sunday or a legal holiday as defined in this section."

{¶ 20} The trial court held that R.C 1.14 was inapplicable, reasoning that "the Supreme Court of Ohio has equated filing extensions for initiative and referendum petitions pursuant to R.C. 1.14. to substantial compliance and substantial compliance is not acceptable," citing *State ex. rel. Committee for the Proposed Ordinance to Repeal Ordinance No. 146–02 v. Lakewood* (2003) 100 Ohio St.3d 252, 2003-Ohio-5771, 798 N.E.2d 362. The trial court misinterpreted *Lakewood* and incorrectly concluded that R.C. 1.14 was inapplicable.

{¶ 21} In *Lakewood,* the Ohio Supreme Court was asked to determine whether R.C. 1.14 applied to a provision in Lakewood's municipal charter that required all proposed ordinances (not referendum petitions) to be filed with the city council 30 days before the election. The election was to be held November 4, 2003; the city council meeting at which the petitioners sought to file the ordinance was Monday, October 6, 2003. The appellants contended that because the 30th day before the election fell on a Sunday, R.C. 1.14 should apply. The Supreme Court found that R.C. 1.14 did not apply, not because the statute permitted substantial compliance, but because pursuant to R.C. 1.14 and the Lakewood Charter, appellants were still required to file before 4:30 p.m. on Monday, October 6. The city council meeting did not take place until 7:30 p.m. that Monday. The court stated that given a *hypothetical* application of R.C. 1.14, the appellants' filing was still untimely, because the grace period could not save them. Id., 100 Ohio St.3d 252, 798 N.E.2d 362, at ¶ 26–27. Indeed, *Lakewood* expressly stated that R.C. 1.14 was applicable to election cases. Id.

{¶ 22} Here, the trial court merely considered whether substantial compliance was permissible; although substantial compliance is acceptable only when an election law provision clearly states that it is, id. at ¶ 30, substantial compliance is irrelevant to this issue. The trial court did not properly consider R.C. 1.14, because it incorrectly equated the use of R.C. 1.14 to substantial compliance. After determining that Ordinance 3–2003 failed to meet the requirements for an emergency ordinance, thus rendering it subject to referendum, the only question remaining for consideration was whether, applying R.C. 1.14, appellant's filing of the referendum petition was timely.

{¶ 23} Appellant argues that the Clay Center office was closed to the public on July 9, 2003, either for the entire day or before its usual closing time on that day, for the purpose of R.C. 1.14. We agree. The manner and circumstances in which Clay Center maintained its public office—failing to hold or notify the public of regular hours, failing to notify the public of what hours the office would be open, failing to make contingency plans for the absence of personnel requiring office closure, failing to give the public notice of methods of filing official documents—demonstrate that under any construction of facts, the office was closed to the public for filing documents on July 9, 2003.

{¶ 24} Appellees argue that we should not apply R.C. 1.14's provision of an office closing before its "usual closing time on that day," because the Clay Center office was never open at "usual" times; that is, because Clay Center does not keep "usual" office hours, R.C. 1.14 does not apply to it. Thus, appellees argue, in order for appellant to prevail this court must find that the Clay Center office was closed for the *entire day* of July 9. Appellees argue that this court may not liberally construe the facts or the statute, because strict compliance dictates that appellant did not file within the time limit.

{¶ 25} Appellees essentially argue that in a small municipality or village like Clay Center, "everyone knows" the manner and circumstances in which the office runs; therefore, appellant had the burden to take greater care to timely file the petition. That is, appellant should have known that there were no usual hours during which the office was open. This argument is wholly without merit. R.C. 1.14 grants an extra day in which to file if the "*public office,* in which an act, required by law to be performed, is closed *to the public* for the entire day * * * or before its *usual closing time* on that day."

{¶ 26} If appellees were correct, then any township, municipality, or village in Ohio could circumvent the statute simply by not posting or keeping regular hours of operation, failing to ensure that adequate personnel are on hand in the public office to receive official documents, or failing to notify the public of the manner in which it accepts official documents for filing. If a visitor who had never set foot in Clay Center or Ottawa County had come to Clay Center on July 9 in order to

file an official document, would that person have been forced to wait outside the office door all day long, waiting for an official to come along, not knowing what was usually done, or else forfeit his right to timely file a document? Clay Center and White Rock argue only that the referendum statute requires strict compliance and that appellant had ample opportunity to strictly comply. However, R.C. 1.14 requires us to determine whether the office was "closed to the public."

{¶ 27} No liberal construction of these facts is necessary to reach the inescapable conclusion that the office was "closed to the public" within the meaning of R.C. 1.14. Iffland's and Fondessy's testimony regarding the manner and methods in which Clay Center's office operated provides sufficient evidence in support of this conclusion. Iffland has been the clerk of Clay Center since 1962. When asked how Iffland kept usual office hours in his position as clerk of Clay Center, the following exchange occurred:

{¶ 28} "Q. Are you usually [in the office] at the same time?

{¶ 29} "A. No.

{¶ 30} "Q. Could those times have been in the afternoon?

{¶ 31} "A. Possibly. I do not know.

{¶ 32} "Q. What is your usual time to be here?

{¶ 33} "A. There is no usual time.

{¶ 34} "Q. Are there any posted hours anywhere on the Town Hall?

{¶ 35} "A. No, sir.

{¶ 36} "Q. Do you have a general time you're here? Do you generally come [to the office] in the mornings or generally in the afternoons?

{¶ 37} "A. I think, sir, that you are missing the point. I'm retired and I do not know when I come in. Whenever I feel like it. I don't, when I have work to do, I do it and I don't pay any attention to clocks.

{¶ 38} "* * *

{¶ 39} "Q. Does anyone here in the * * * Village of Clay Center Hall * * * keep normal business hours?

{¶ 40} "A. No. * * * There are no usual hours.

{¶ 41} "Q. Are there hours that the office is generally open?

{¶ 42} "A. Generally, I come down and get the mail whenever I get around to it, and I may stop in [the office] and open my mail and leave."

{¶ 43} Iffland also testified that "normally," if one wanted to file a document with Clay Center when he was not in the Clay Center office, one would call him (presumably at some place other than the office) and set up an appointment to

meet him at the office. When asked how one would file a document if he was unavailable, Iffland stated that one could either contact the president of the council or the mayor if the office was closed, or else just place the document on his desk if the office doors were open. These statements elude answering whether the clerk's office was closed to the public, or closed to the public before its usual closing time, on July 9. When asked how a member of the public would know to file a document by placing it on his desk, or even *which* desk in that office was the clerk's desk, Iffland stated that there was nothing at all to indicate this: "Anybody walks in that door, knows that's my desk."

{¶ 44} Fondessy testified that on July 9, the last day to file the petition, he was in the office for approximately 45 minutes, between 9:30 a.m. and 10:15 a.m., but he never saw appellant. He testified that his purpose in opening the office was to make some photocopies and fuel a tractor. He did not testify that he was in the office for the purpose of opening the office to the public or for the purpose of conducting the activities of the village clerk in Iffland's absence. For those 45 minutes, the office door was open, but Fondessy spent part of that time outside the office's building. After Fondessy left, he locked the office. Appellees have not contended that for the rest of that day someone else was inside the office or that the office was open. However, appellees argue that because the office was open for part of the day, and hence not closed for the entire day, the petition is time-barred.

{¶ 45} We agree with appellant that these facts—that Fondessy fueled a tractor and made photocopies with the office door unlocked for 45 minutes—are insufficient to render the office open to the public for the purposes of R.C. 1.14. These facts do not preclude a conclusion that the office of the clerk was closed on July 9. Strict compliance with R.C. 1.14 and R.C. 731.29 dictates this conclusion. For example, one court, in enforcing strict compliance with R.C. 731.29, and finding time-barred a referendum petition when it was not filed with the city auditor as required by statute, stated, "[W]here there is no city auditor any proposed ordinance and any initiative or referendum petition must be filed with the official to whom the duties of auditor have been assigned—that is, with the auditor in fact, whatever his official title." *Edward Rose of Ohio, Inc. v. McLaughlin* (1970), 22 Ohio App.2d 190, 193, 51 O.O.2d 357, 259 N.E.2d 754. The same reasoning applies to the strict requirement of R.C. 731.29 that in villages, a referendum petition must be filed with the village clerk.

{¶ 46} Appellees also raise several contentions regarding what appellant could have done to file the petition within 30 days, but each contention is specious, at best. Appellees contend that appellant should have known which desk was Iffland's and should have just placed it on his desk on July 8 when she found the office open. Appellant had the right to file the petition up to and through July 9;

Iffland testified that there is nothing in his office or on his desk to indicate to that official documents should be simply placed on his desk for filing purposes; he testified that there is no official stamp he uses as clerk to indicate that something has been received by him in his capacity as clerk—he usually personally signs the documents he certifies as received.

{¶ 47} Appellees further contend that appellant should have known to contact Iffland, Fondessy, or another Clay Center official, either in person or by telephone, and ask that official to accept a document for filing. Appellant testified that she did, in fact, attempt to do just that, but that no one was home. Moreover, appellees' suggestion is also insufficient to render the Clay Center office open to the public for the purposes of R.C. 1.14. Members of the public cannot be expected to know whom to look up in a telephone directory to ask for help; no evidence was advanced indicating that such instructions were posted for public notice any place on the Clay Center office building. Each point appellees raise amounts to an assertion that because appellant, as a native, should have known better, she should be time-barred.

{¶ 48} On this point, a substantial quotation from *Edward Rose* regarding the requirements of R.C. 731.29 is particularly instructive and is worthy of repetition:

{¶ 49} "Who should be designated as the repository for such filing is a question for the Legislature to decide. They named the auditor. In other instances and for other purposes they and other legislative authorities have sometimes designated a clerk or other official similar purposes.

{¶ 50} "The Constitution says that these things must be done according to law. According to law, they must be filed with the auditor. In the absence of an official so named, they must be filed with the auditor in fact.

{¶ 51} "If petitioners were free to file these documents wherever they thought would be most conspicuous and accessible, they might post them on an outdoor bulletin board at city hall where all could read them 24 hours each day. But this would be wholly ineffective, because not done according to law; and it would be utterly confusing, because no one relying upon the law would look there.

{¶ 52} "Filing with the clerk of council was not in compliance with the law; that official is not authorized to certify the petition to the board of elections." 22 Ohio App.2d at 194, 51 O.O.2d 357, 259 N.E.2d 754.

{¶ 53} Appellees' argument is thus correct on one point: Strict compliance does apply. In the absence of the village clerk, the petition had to be filed with the clerk in fact. Strict compliance dictates that since no evidence demonstrates that Fondessy, the president of council, was the village clerk in fact on July 9, the clerk's office was closed to the public on July 9. Fondessy was not authorized to certify the petition to the board of elections, nor did he state that he was in the

office to do anything other than fuel a tractor and make photocopies, and he did not state that he opened the office to the public. Fondessy testified that although he might stop in the office four to five days a week for the purpose of mowing grass or other president of council duties, the time he would be there "just varies" and that if he had something to do, he would be there. Thus, it does not matter whether Fondessy had unlocked the office doors for 45 minutes on July 9; the clerk's office was closed to the public on July 9. Pursuant to R.C. 1.14, appellant timely filed the referendum petition on July 10, when Iffland signed a certified mail receipt for the petition.

■ {¶ 54} Alternatively, appellees argue that if the office was closed, then appellant should still be required to strictly comply with the filing deadline, because she could have filed the petition on any of the days preceding July 9 that the office was open. This argument is also wholly without merit. R.C. 731.29 gives 30 days in which to file a petition. The statutory grant of 30 days in which to file is a privilege that cannot be reduced at the whim of municipal officials. Hypothetically, appellees' argument has no limit: If the office had been closed for the entire week preceding July 9 because Iffland had chosen to go on vacation, with no alternate staff available to open the office to the public and accept documents for filing, then because any public person would have had the preceding 23 days in which to file a petition, that person would be barred had he not done so! R.C. 731.29 and 1.14 preclude such an absurd construction.

■ {¶ 55} Clay Center's argument that R.C. 1.14 should not be applied to it because it lacks usual hours of operation supports a conclusion that R.C. 1.14 seems to be particularly applicable to small municipalities or villages that wish to sporadically close their public offices for whatever reason, or to maintain a small staff due to budgetary constraints, without adequate alternative provisions necessary to keep a physical office open for regular hours, five days a week. Hence the following Ohio Supreme Court statement in 1966: "We believe that at least part of the motivation for the addition of [the second paragraph of R.C. 1.14] was the recognition by the General Assembly [in 1961] of the fact that this country has in recent years been rapidly becoming a 'five-day-work-week' country." *Van Meter v. Segal–Schadel Co.* (1966), 5 Ohio St.2d 185, 188, 214 N.E.2d 664. R.C. 1.14 does not allow for distinctions of size or budget of the city or village. Nor does an alternate method for accepting filings—such as with another official, or at someone's home—suffice. See, e.g., *Hackett v. Kibbee* (1965), 4 Ohio App.2d 246, 33 O.O.2d 287, 211 N.E.2d 892, applying and explaining R.C. 1.14. "The fact that a sign on the door of the courthouse in which the office of the Clerk of Courts is located, says: 'In case of emergency see the Sheriff'—does not require the plaintiff who seeks to file a petition to comply with that request." Id. at 248, 33 O.O.2d 287, 211 N.E.2d 892.

{¶ 56} Appellant has demonstrated her entitlement to a writ of mandamus. First, she has established a clear legal right to have the petition transmitted: The office was closed to the public on July 9, and appellant timely filed the petition with Iffland on July 10, the next day Iffland opened the office, pursuant to R.C. 1.14. Second, Iffland has a clear legal duty in his capacity as village clerk to accept the petition as filed and then to take the steps required pursuant to R.C. 731.29. Third, appellant has demonstrated her lack of an adequate remedy in the ordinary course of law: As *Webb* stated, the propriety of mandamus in similar circumstances has been recognized. *Webb*, supra, 99 Ohio St.3d at 171, 2003-Ohio-3049, 789 N.E.2d 1102, citing *State ex rel. Mill Creek Metro. Park Dist. Bd. of Commrs. v. Tablack* (1999), 86 Ohio St.3d 293, 714 N.E.2d 917; *State ex rel. Ramsey v. Indus. Comm.* (1943), 141 Ohio St. 398, 25 O.O. 542, 48 N.E.2d 232 (granting writ to compel petition for filing under former analogous section). Based on the above, we find that the trial court abused its discretion in granting summary judgment to appellees and denying appellant's request for a writ of mandamus. Appellant's assignment of error is well taken.

{¶ 57} For the foregoing reasons, the judgment of the Ottawa County Court of Common Pleas is reversed with respect to the grant of summary judgment in favor of appellees. That court is hereby ordered to enter summary judgment in favor of appellant on her claim for a writ of mandamus and to issue a writ of mandamus ordering the clerk of the village of Clay Center to (1) accept appellant's referendum petition on ordinance 3–2003 as filed, (2) take all required subsequent steps with respect to the referendum petition pursuant to the applicable provisions in the Ohio Revised Code, and (3) consider the date on which the trial court issues the writ as the starting date from which the clerk computes time elapsed for his subsequent filings with the board of elections. Costs are assessed to appellees pursuant to App.R. 24.

Judgment reversed.

ARLENE SINGER, P.J., and PETER M. HANDWORK, J., concur.