[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Halstead v. Jackson*, Slip Opinion No. 2022-Ohio-3205.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-3205

THE STATE EX REL. HALSTEAD ET AL. *v*. JACKSON, FINANCE DIR., ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Halstead v. Jackson*, Slip Opinion No. 2022-Ohio-3205.]**

*Elections—Mandamus—Emergency ordinances or measures necessary for the immediate preservation of the public peace, health, or safety in a municipal corporation shall go into immediate effect and are not subject to referendum—Writ denied.*

(No. 2022-1008—Submitted September 6, 2022—Decided September 13, 2022.)

IN MANDAMUS.

————————————

**Per Curiam.**

{¶ 1} In this expedited election case, relators, five electors of the city of Canal Winchester,[1] seek a writ of mandamus to have a referendum on a zoning ordinance

————————————

1. Relators are Angela M. Halstead, Randy S. Stemen, Bethany R. Ferguson, Ann D. Bennett, and Kathleen M. Vasko.

placed on the November 2022 general-election ballot. Canal Winchester's finance director, respondent Amanda Jackson, refused to send the referendum petition to the board of elections for signature validation because the ordinance was passed as emergency legislation. Relators filed this action against Jackson and respondents Canal Winchester and the Canal Winchester City Council (collectively, "the city") to compel Jackson to transmit the petition to the board. We deny the writ. We also deny relators' request for an award of attorney fees.

## I. BACKGROUND

### A. Canal Winchester's referendum procedure

{¶ 2} Article II, Section 1f of the Ohio Constitution reserves the people's referendum power and provides that "such power[] shall be exercised in the manner now or hereafter provided by law." Section 10.01 of Canal Winchester's charter provides that "ordinances and resolutions adopted by the Council shall be subject to referendum, *as provided by the Constitution and laws of Ohio*." (Emphasis added.) Canal Winchester thus uses the same referendum process that applies to noncharter municipalities. That process involves five basic steps.

{¶ 3} First, before a referendum petition is circulated for signatures, a certified copy of the ordinance being challenged by the petition must be filed with Canal Winchester's finance director. R.C. 731.32.[2] Second, a sufficient number of electors must sign the petition, and the petition must be filed with the finance director within 30 days after the ordinance was filed with the mayor. R.C. 731.29. Third, the finance director must hold the petition for at least ten days, but not later than "four p.m. of the ninetieth day before the day of the election," and then must transmit the petition to the board. *Id.* Fourth, the board must examine the signatures and, within ten days, attest to the finance director the number of valid signatures on

_____

2. R.C. 731.32 requires the precirculation petition to be filed with the city auditor. In Canal Winchester, the finance director performs the duties of city auditor. Canal Winchester City Charter, Section 6.04(C).

the petition. *Id.* And fifth, if the finance director "certifies the sufficiency and validity of the petition to the board," the board must submit the ordinance to the voters for approval or rejection at the next general election occurring at least 90 days after the finance director's certification. *Id*.

{¶ 4} In this case, the city argues that Jackson was not required to perform any of the finance director's duties outlined above because relators are attempting to challenge an ordinance passed as emergency legislation. "[E]mergency ordinances or measures necessary for the immediate preservation of the public peace, health, or safety in [the] municipal corporation, shall go into immediate effect," R.C. 731.30, and are not subject to referendum, *State ex rel. Webb v. Bliss*, 99 Ohio St.3d 166, 2003-Ohio-3049, 789 N.E.2d 1102, ¶ 11.

### B. Facts and evidence

{¶ 5} The property at issue is approximately 70 acres of undeveloped farmland in southeastern Franklin County, bordered by U.S. Route 33, Bixby Road, and Rager Road. Before 2022, the land was not in a municipality but was contiguous to both Canal Winchester and the city of Columbus. Intervening respondent, NorthPoint Development, L.L.C., is in contract to purchase the land and intends to use it to develop industrial warehouses.

{¶ 6} In September 2021, NorthPoint, Canal Winchester, and the current owners of the property at issue entered into a "pre-annexation agreement," whereby the landowners agreed to petition for annexation to Canal Winchester and NorthPoint and Canal Winchester agreed to take steps for the land to be rezoned for the proposed development. The landowners, however, reserved the right to undo the annexation if Canal Winchester's zoning approval became subject to referendum. The agreement provides:

> If * * * [t]he Zoning * * * Approval[] [is] referred to the electorate
> for approval/referendum vote[,] * * * the City agrees, at Landowners'

request: (i) To reconsider the ordinance accepting the annexation, and to rescind, repeal and reject the annexation approval; and/or (ii) To cooperate fully with Landowners to detach/de-annex the Property from the City under applicable Ohio Revised Code procedure, and to consent to, wholly and fully support with appropriate legislative action (and not oppose) any Landowners' petition to detach/de-annex the Property from the City and take any other action provided or required by law to detach or de-annex the Property. Landowners reserve[] the right to seek specific performance of the City's obligations hereunder.

{¶ 7} On January 18, 2022, city council passed a resolution accepting the annexation of the land and an ordinance rezoning the land to "limited manufacturing." The ordinance was not passed as emergency legislation.

{¶ 8} Later that month, relators filed a certified copy of the ordinance with Jackson pursuant to R.C. 731.32, to have it placed on the November 2022 ballot for referendum. Relators filed a signed petition with Jackson in February, and the Franklin County Board of Elections certified the number of valid signatures on the petition. Jackson did not certify the sufficiency and validity of the petition to the board.

{¶ 9} In March, based on the pending referendum petition, the landowners, through their attorney, informed Canal Winchester that they intended to exercise their right under the pre-annexation agreement to petition for detachment of the property from Canal Winchester. The city and NorthPoint have presented evidence suggesting that if the property becomes detached from Canal Winchester, the landowners and NorthPoint will seek to have Columbus annex the land.

{¶ 10} On May 16, city council passed a second ordinance that repealed the January ordinance and rezoned the 70 acres at issue to "planned industrial district." The May ordinance was passed as emergency legislation, stating:

> [T]his Ordinance is hereby declared to be an emergency measure, to be effective immediately upon passage, such emergency being necessary for the immediate preservation of the public peace, health, safety, or welfare, to wit: for the preservation and addition of employment opportunities in the City of Canal Winchester to preserve and increase municipal income tax revenues; to protect the value of previously made utility infrastructure investments in the Bixby/US 33 area; and to protect the City's influence in and provide a source of public revenue for public infrastructure improvements to be made at Bixby Road/US 33.

{¶ 11} On May 19, relators filed a certified copy of the May ordinance with Jackson, intending to have it placed on the November ballot for referendum. Relators filed a signed petition with Jackson on June 16. Upon filing, Jackson gave relator Vasko a written receipt stating that "[t]he ordinance referenced is an emergency ordinance that was effective upon passage and that is not subject to referendum."

{¶ 12} On June 29, relator Halstead emailed Jackson, asking her when she expected the board to validate the signatures on the petition. Jackson responded that same day, stating that the May ordinance "was adopted as emergency legislation, and so it is not subject to referendum. The document you provided will not be sent to the [b]oard."

{¶ 13} On July 5, relators' counsel sent a letter to Canal Winchester's city attorney, arguing that the passage of the ordinance as emergency legislation violated

Canal Winchester's charter. The city attorney did not respond to the letter. On August 9, relators' counsel emailed the city attorney, telling him that the statutory deadline for submitting the petition to the board was the next day. The city attorney responded on August 10, stating that the ordinance is not subject to referendum because it was passed as emergency legislation.

## C. Procedural history

{¶ 14} On August 15, relators filed their complaint for a writ of mandamus to compel Jackson to transmit the petition to the board. NorthPoint moved to intervene, and we granted that motion on August 24. 167 Ohio St.3d 1494, 2022-Ohio-2950, ___ N.E.3d ___. The parties have submitted evidence, and the matter is fully briefed.

## II. ANALYSIS

### A. Laches

{¶ 15} The city and NorthPoint argue that relators' claim is barred under the doctrine of laches. "The elements of laches are (1) unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse for the delay, (3) knowledge, actual or constructive, of the injury or wrong, and (4) prejudice to the other party." *State ex rel. Polo v. Cuyahoga Cty. Bd. of Elections*, 74 Ohio St.3d 143, 145, 656 N.E.2d 1277 (1995).

{¶ 16} On June 29, Jackson unequivocally told Halstead that the petition "w[ould] not be sent to the [b]oard." Relators did not file their complaint for a writ of mandamus for another 47 days. Our precedent supports the conclusion that relators caused an unreasonable and inexcusable delay by waiting so long to file this lawsuit. *See State ex rel. Jones v. LaRose*, __ Ohio St.3d __, 2022-Ohio-2445, __ N.E.3d __, ¶ 12.

{¶ 17} But as noted above, "a party asserting a laches defense must demonstrate that it has been prejudiced by the other party's delay." *State ex rel. Davis v. Summit Cty. Bd. of Elections*, 137 Ohio St.3d 222, 2013-Ohio-4616, 998

N.E.2d 1093, ¶ 10. "[T]he prejudice must be material before laches will bar relief." *State ex rel. Pennington v. Bivens*, 166 Ohio St.3d 241, 2021-Ohio-3134, 185 N.E.3d 41, ¶ 26.

{¶ 18} The city argues that it has been prejudiced because "development plans have continued" since June. The city has presented evidence that it has negotiated agreements with various parties, passed a resolution, and approved the final site plan—all since June—in furtherance of NorthPoint's proposed development. NorthPoint similarly argues that it has spent substantial amounts of money developing the property since the ordinance was passed. NorthPoint has submitted evidence showing that it has revised and obtained approval of the site plan, negotiated agreements with various parties, and instructed its architects and engineering consultants to proceed with the project.

{¶ 19} This evidence shows that the city and NorthPoint could be harmed if they lose this lawsuit, but it does not show that they have been harmed by relators' *delay in filing* the lawsuit. Notably, neither the city nor NorthPoint has presented evidence showing that they would have stopped their development activities if relators had filed suit in June. In fact, NorthPoint argues only that it has made significant investments "in reliance upon the immediate effectiveness of" the May ordinance. The city and NorthPoint have not shown that they relied on relators' inaction. NorthPoint argues that if relators prevail in this case, the board might not have enough time to prepare absentee ballots by September 23, as required under the Uniformed and Overseas Citizens Absentee Voting Act, 52 U.S.C. 20302. *See also* R.C. 3511.04; R.C. 3509.01. But NorthPoint must show that it—not the board—has been prejudiced. We do not apply laches in this case because the city and NorthPoint have not shown that they have been "prejudiced by the other party's delay," *Davis* at ¶ 10.

**B. Mandamus claim**

{¶ 20} To be entitled to a writ of mandamus, relators must prove by clear and convincing evidence that they have a clear legal right to the requested relief, that Jackson has a clear legal duty to provide that relief, and that they lack an adequate remedy in the ordinary course of the law. *See State ex rel. Waters v. Spaeth*, 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, ¶ 6, 13. Given the proximity of the November election, relators lack an adequate remedy in the ordinary course of the law. *See State ex rel. Finkbeiner v. Lucas Cty. Bd. of Elections*, 122 Ohio St.3d 462, 2009-Ohio-3657, 912 N.E.2d 573, ¶ 18.

*1. The city's charter does not subject all zoning ordinances to referendum*

{¶ 21} Relators first argue that Jackson has a clear legal duty to process the referendum petition because, they contend, Section 4.11(A) of Canal Winchester's charter provides that a zoning ordinance is subject to the people's referendum power even if the ordinance was passed as emergency legislation.

{¶ 22} Section 4.11(A) provides: "Ordinances establishing, amending, revising, changing or repealing zoning classifications, districts, uses or regulations shall be subject to the provisions of this Charter pertaining to their enactment and matters of initiative or referendum." Relators argue that the phrase "shall be subject to" has two objects: (1) "the provisions of this Charter pertaining to their enactment" and (2) "matters of initiative or referendum." Thus, according to relators, Section 4.11(A) provides that zoning ordinances "shall be subject to * * * matters of initiative or referendum." But relators fail to explain how such a provision would make any sense. What would it mean for an ordinance to be subject to referendum matters?

{¶ 23} The more natural reading of Section 4.11(A) is that the phrase "subject to" has one object: "*the provisions of this Charter* pertaining to their enactment and matters of initiative or referendum." (Emphasis added.) In other words, Section 4.11(A) confirms that zoning ordinances may be enacted in the same way as other

ordinances and that the charter's referendum provisions apply to zoning ordinances. As noted above, the charter incorporates state law concerning referendum petitions. *See* Canal Winchester City Charter, Section 10.01. And state law exempts from the referendum power ordinances passed as emergency legislation. R.C. 731.29 ("Any ordinance or other measure passed by the legislative authority of a municipal corporation shall be subject to the referendum except as provided by section 731.30 of the Revised Code"); R.C. 731.30 ("emergency ordinances or measures necessary for the immediate preservation of the public peace, health, or safety in such municipal corporation, shall go into immediate effect").

{¶ 24} Relators concede that "[R.C.] 731.30 provides that emergency ordinances or measures are not subject to referendum." But they argue that that statute conflicts with Section 4.07(A) of the city's charter, which provides that any emergency ordinance "shall take effect upon passage unless a later time is specified therein." Relators point out that Section 4.07(A) does not "expressly exempt emergency ordinances or measures from referendum" and suggest that a zoning ordinance passed as emergency legislation can go into immediate effect but still be subject to referendum.

{¶ 25} Relators offer no support for this theory, and they fail to address the fact that R.C. 731.30 also does not expressly exempt emergency legislation from referendum, yet its "immediate effect" language forecloses the possibility of a referendum. *See Webb*, 99 Ohio St.3d 166, 2003-Ohio-3049, 789 N.E.2d 1102, at ¶ 11. Contrary to relators' argument, there is no relevant conflict between R.C. 731.30 and Canal Winchester's charter. Under the city's charter, a zoning ordinance validly passed as emergency legislation is not subject to referendum.

*2. The ordinance satisfies R.C. 731.30*

{¶ 26} Relators next argue that the May ordinance is subject to referendum because city council did not comply with R.C. 731.30, which provides:

[E]mergency ordinances or measures necessary for the immediate preservation of the public peace, health, or safety in such municipal corporation, shall go into immediate effect. Such emergency ordinances or measures must, upon a yea and nay vote, receive a two-thirds vote of all the members elected to the legislative authority, and *the reasons for such necessity shall be set forth* in one section of the ordinance or other measure.

(Emphasis added.)

**{¶ 27}** "Determining emergency and necessity for immediate operation is a legislative function." *Jurcisin v. Cuyahoga Cty. Bd. of Elections*, 35 Ohio St.3d 137, 145, 519 N.E.2d 347 (1988). Therefore, in determining whether city council satisfied R.C. 731.30, our review is "limited." *See State ex rel. Hasselbach v. Sandusky Cty. Bd. of Elections*, 157 Ohio St.3d 433, 2019-Ohio-3751, 137 N.E.3d 1128, ¶ 32. We "may not determine whether the reason given [by city council] was a valid one." *Id.*

**{¶ 28}** But we "may determine whether [city] council gave a reason for passage of the ordinance as an emergency that was 'purely conclusory, tautological, or illusory.' " *Id.*, quoting *Webb*, 99 Ohio St.3d 166, 2003-Ohio-3049, 789 N.E.2d 1102, at ¶ 14. For example, a city council fails to comply with R.C. 731.30 if it gives only "generalized reasons that could apply to *any* zoning change." (Emphasis sic.) *Webb* at ¶ 22. In *Webb*, we held that an emergency declaration in a zoning ordinance did not comply with R.C. 731.30, because it merely stated that passage as an emergency was necessary "for the proper regulation and use of lands within" the municipality and because the parcel at issue was "more properly classified and consistent with" its new classification. *Webb* at ¶ 2.

**{¶ 29}** The May ordinance states that it was passed as emergency legislation for three reasons: (1) "for the preservation and addition of employment opportunities

10

in the City of Canal Winchester to preserve and increase municipal income tax revenues," (2) "to protect the value of previously made utility infrastructure investments in the Bixby/US 33 area," and (3) "to protect the City's influence in and provide a source of public revenue for public infrastructure improvements to be made at Bixby Road/US 33." Relators argue that these reasons could apply to any zoning change within Canal Winchester or to any zoning change "within a significantly large area."

**{¶ 30}** " ' "[M]erely parrot[ing] a generalized, conclusory phrase" ' " that could be universally applied to any ordinance does not satisfy R.C. 731.30." (Brackets added in *Hasselbach*.) *Hasselbach*, 157 Ohio St.3d 433, 2019-Ohio-3751, 137 N.E.3d 1128, at ¶ 34, quoting *Webb* at ¶ 22, quoting *State ex rel. Luff v. Sommer*, 9th Dist. Summit No. 10169, 1981 WL 4089 (July 30, 1981). But that is not what city council did here. A voter reviewing the May ordinance would know that city council passed it as emergency legislation for specific reasons—namely, to increase Canal Winchester's income-tax revenue, to protect Canal Winchester's infrastructure investments, and to ensure that Canal Winchester would have influence over and be able to fund infrastructure improvements in the vicinity of the development. These reasons are not implicated every time Canal Winchester makes a zoning change.

**{¶ 31}** Relators also suggest that the emergency declaration is invalid because the reasons stated by city council are not sufficiently "public" in nature. In *Hasselbach*, we held that an emergency declaration was invalid because it failed to make a "connection between * * * municipal interests and the project costs of a private developer." *Id*. at ¶ 35. The ordinance at issue in *Hasselbach* stated only that development of the property needed to be undertaken immediately "to avoid an increase in project cost," *id*. at ¶ 3, and it "did not even attempt to connect," *id*. at ¶ 37, that reason to the municipality's interests. The emergency declaration in this case differs from the one in *Hasselbach* because the one in this case refers to clear

interests of the municipality: increasing income-tax revenue and protecting infrastructure investments.

**{¶ 32}** We hold, therefore, that the May ordinance was properly enacted as emergency legislation and is not subject to referendum.

### III. CONCLUSION

**{¶ 33}** We deny the writ of mandamus and relators' request for attorney fees.

Writ denied.

O'CONNOR, C.J., and DONNELLY, STEWART, and BRUNNER, JJ., concur.

KENNEDY, FISCHER, and DEWINE, JJ., concur in judgment only.

_____

Shane W. Ewald, L.L.C., and Shane W. Ewald; and The Law Office of Tricia A. Sprankle and Tricia A. Sprankle, for relators.

Frost Brown Todd, L.L.C., Thaddeus M. Boggs, Stephen J. Smith, and Jesse J. Shamp, for respondents.

Porter, Wright, Morris & Arthur, L.L.P., Terry W. Posey Jr., L. Bradfield Hughes, and S. Ahmadul Huda, for intervening respondent.

_____