DECISION AND JUDGMENT ENTRY
{¶ 1} The Athens County Commissioners ("County") appeal a judgment denying their application to vacate an arbitration award and simultaneously granting the Ohio Patrolmen's Benevolent Association's ("Union") application to confirm it. The County contends the trial court should have vacated the award because the arbitrator exceeded his authority by reinstating an employee to his position as a 911 dispatcher after the arbitrator concluded the County had just cause to terminate him for reporting to work intoxicated and sexually harassing a co-worker. But the collective bargaining agreement ("CBA") does not preclude an arbitrator from modifying the County's decision to terminate an employee even if the arbitrator finds there was just cause for the termination at the time the *Page 2 
decision was made. Therefore, the trial court properly confirmed the award.
 {¶ 2} The County further argues that the arbitrator should only have considered the evidence available to the County at the time it made the decision to terminate the employee. The County contends the arbitrator violated the terms of the parties' CBA and existing law by considering "mitigation" evidence, which was not discovered until after his termination, regarding the employee's mental health. However, there is no evidence the parties attempted to narrow the jurisdiction of the arbitrator so he could only determine whether just cause for the termination existed when the County discharged the employee. Furthermore, there is some legal support for the arbitrator's consideration of post-termination evidence in deciding whether the employee's suspension should be modified. Because the CBA does not preclude the arbitrator from relying on this evidence, the trial court properly found the arbitrator's decision was not in violation of the law or the CBA.
 {¶ 3} The Union cross-appeals the trial court's dismissal of its complaint seeking a writ of mandamus ordering the County to reinstate the employee and awarding back pay. The trial court concluded the issue was moot in light of its judgment. However, even though the court confirmed the arbitration award, the County still had not returned the employee to his position, so the action for a writ of mandamus was not moot. But, because the trial court has not considered the merits of that complaint, it would be improper for us to do so in the first instance as the Union asks. Instead, we reverse the trial court's dismissal of the complaint for mandamus and remand this matter to the trial court for further *Page 3 
proceedings.
 I. Facts {¶ 4} Warren Ferguson was employed as a 911 dispatcher in Athens County. One day in November 2005, he arrived at work early to attend a meeting where the other participants observed that he was acting in a "strange" manner. Following the meeting, Mr. Ferguson went to his office area. On his way, he stopped in the office of administrative assistant, Melissa Fowler-Dixon, who was speaking with Nathan Cox, a 911 coordinator. The two co-workers observed that Mr. Ferguson appeared intoxicated and his clothing smelled like alcohol. He then made several inappropriate and offensive sexual comments directed at Ms. Fowler-Dixon.
 {¶ 5} Approximately two weeks after this incident, the County notified Mr. Ferguson it was terminating his employment because of his actions. Mr. Ferguson filed a grievance alleging that his discharge was without just cause in violation of Article 10, Section 10.1 of the parties' CBA. The County denied the grievance and the matter proceeded to binding arbitration in April 2006.
 {¶ 6} During the hearing, both parties submitted witness testimony and exhibits. The County argued that Mr. Ferguson's discharge was justified because of the severity of the sexual harassment and his violation of the County's drug-free workplace policy. And, given the seriousness of his actions, it argued progressive discipline was unwarranted.
 {¶ 7} The Union did not dispute the inappropriateness of Mr. Ferguson's conduct, but contended that discharge was an unwarranted and extreme *Page 4 
response given all the underlying facts and circumstances. Specifically, the Union noted that Mr. Ferguson had been employed as a dispatcher for ten years and had an excellent work record. The Union attributed Mr. Ferguson's misconduct to a number of stress factors accumulating in his life: severe pain from a chronic back problem, injuries to his wife as the result of a brain stem tumor, and his mother's stage 3 breast cancer diagnosis and treatment. Mr. Ferguson testified that he consumed a large amount of alcohol on the morning of the incident to dull his recurrent back pain. The alcohol mixed with percocet prescribed for his back pain and he lost all inhibitions.
 {¶ 8} The Union introduced a report prepared by John Hipes, a registered nurse practitioner at the Veterans Outpatient Clinic in Athens. Mr. Hipes began treating Mr. Ferguson after his termination and diagnosed him as suffering from Generalized Anxiety Disorder. Mr. Hipes noted that Mr. Ferguson's condition improved after he was prescribed the correct medication and that he has not consumed alcohol since the incident. Mr. Hipes further noted that Mr. Ferguson had no prior history of mental illness and "[h] is favorable response to medication coupled with his complete abstinence from alcohol supports that [the Grievant's] actions likely occurred because of his multifactored distress."
 II. Relevant Provisions of the CBA {¶ 9} The parties agree that a CBA between the County and the Union governs this matter. Relevant portions of the CBA follow.
 {¶ 10} Article 10, Section 10.1 of the CBA states: *Page 5 
 No employee shall be reduced in pay or position, suspended, discharged or removed except for just cause. Forms of disciplinary action are limited to:
 A. Documented verbal warning;
 B. Written reprimand;
 C. Suspension without pay; or
 D. Discharge from employment.
 Discipline shall be applied in a corrective, progressive and uniform manner, except in cases of serious misconduct.
 {¶ 11} Article 10, Section 10.9 of the CBA states:
 All grievances involving disciplinary action of a suspension, demotion or dismissal shall be filed directly at Step 3 of the Grievance Procedure.
 {¶ 12} Article 9, Section 9.5 of the CBA states:
 The following procedures shall be followed in the processing of any grievance:
 Step 3: Arbitration. * * *
 The arbitrator shall limit his decision to a specific issue outlined in a submission agreement and strictly to the interpretation, application or enforcement of the specific Articles and Sections of this Agreement. The arbitrator shall be without power or authority to make any decision:
 A. Contrary to, inconsistent with, or modifying or varying in any way the terms of this Agreement or applicable law;
 D. Contrary to, inconsistent with, changing, altering, limiting or modifying any practice, policy, rules or regulations presently or in the future established by the Employer so long as such a practice, policy, rule or regulation does not conflict with the Agreement. *Page 6 
 In cases of discharge or of suspension, the arbitrator shall have the authority to recommend modification of said discipline. * * *
 Unless contrary to law, the decision of the arbitrator shall be final and binding upon management, the Union, and any employee involved in the matter.
 III. Arbitrator's Decision {¶ 13} The arbitrator concluded the County discharged Mr. Ferguson based upon his serious misconduct and that this decision was justifiable based upon the facts and evidence available in November 2005. He also found that the complete details of Mr. Ferguson's mental illness were not disclosed to the County until well after the discharge. The arbitrator agreed with the County that progressive discipline was not appropriate in this case and it was clear from the evidence that Mr. Ferguson was unable to work as a 911 dispatcher at the time the County discharged him.
 {¶ 14} However, the arbitrator then concluded that mitigating circumstances must be considered to reduce the penalty from discharge to something less severe. The arbitrator determined that Mr. Ferguson qualifies as a "troubled employee", i.e., one suffering from a serious mental illness, based on Mr. Hipes' diagnosis of generalized anxiety disorder. He further determined that Mr. Ferguson was a "long-term employee with an excellent work record and no prior disciplinary record who acted out of his character on one occasion at work because of circumstances beyond his control." The arbitrator found it unlikely *Page 7 
that such conduct would reoccur, determined that the Union had established that Mr. Ferguson had been successfully treated for his condition, and concluded that discharge in this case was unjustified.
 {¶ 15} The arbitrator sustained the grievance in part. He found that Mr. Ferguson should be placed on sick leave status as of the date of his discharge and on unpaid medical leave status upon exhaustion of his available sick leave days. He further found that, upon the presentation of sufficient medical evidence, Mr. Ferguson should be reinstated to his former position and must re-submit evidence of his ability to perform his job every six months thereafter for a two year period. Further, the arbitrator held that the County could subject Mr. Ferguson to random drug and alcohol testing for a two year period.
 IV. Trial Court Proceedings {¶ 16} The Union filed a complaint for writ of mandamus in the Athens County Common Pleas Court asserting that Mr. Ferguson had given notice to the County that he was prepared to return to work in accordance with the arbitrator's decision but the County refused to reinstate him to duty. See State of Ohio ex rel. Ohio Patrolmen's Benevolent Assn. v.Athens County Commissioners, Athens Case No. 06CI296. The Union sought a writ of mandamus ordering Mr. Ferguson's reinstatement to his position as a 911 dispatcher and back pay due to the County's failure to reinstate Mr. Ferguson in accordance with the arbitration award. Id. In a separate action, the County filed an application to vacate the arbitration award. See Athens County Commissioners v. Ohio Patrolmen'sBenevolent Assn., Athens Case No. 06CI312. The Union responded to the *Page 8 
application and filed an application to confirm the arbitration award. Id. The trial court sua sponte consolidated the two cases.
 {¶ 17} In its decision and judgment entry, the trial court recognized the limited scope of its review of an arbitration award. The court then rejected the County's contention that the arbitrator exceeded his powers by modifying the discipline imposed on Mr. Ferguson.
 {¶ 18} First, the court noted that Section 9.5, Step 3 of the CBA authorizes the arbitrator to modify Mr. Ferguson's discipline and does not state that modifications could be made "only if the facts existing and known at the time of discharge fail to support just cause for termination." The court further concluded that the CBA's broad language grants the arbitrator the authority to modify an employee's discipline even when that discipline was based on just cause. The trial court also rejected the County's contention that the arbitrator was limited to considering the evidence as of the date of the discharge.
 {¶ 19} The court recognized that submission statements provided to an arbitrator may limit the arbitrator's authority to modify discipline. However, the court noted that there was no evidence in the record that the parties had submitted a statement to the arbitrator. Therefore, given the broadly-phrased authority to modify discipline under the CBA and the parties' failure to limit that authority via a submission statement, the court found that the arbitrator was authorized to modify Mr. Ferguson's discipline.
 {¶ 20} The trial court concluded that the arbitrator properly found that Mr. Ferguson's conduct warranted disciplinary action and that discharge was the *Page 9 
proper discipline based on the facts available to the County at the time of the discharge. The court also determined that the arbitrator properly modified the discharge to a suspension based on both pre-termination and post-termination evidence. Because the arbitration award drew its essence from the CBA and the arbitrator was arguably construing and applying the contract, the court affirmed the decision and confirmed the award. The court then determined that the Union's mandamus action was moot because the judgment affirming the arbitration award carries the force of a court judgment, including enforceability.
 V. Assignments and Cross-Assignments of Error {¶ 21} The County filed a timely notice of appeal, assigning the following errors:
 Assignment of Error #1: The court of common pleas erred as a matter of law by finding that the arbitrator has the power to modify termination even after finding that just cause for termination was established.
 Assignment of Error #2: The court of common pleas erred by expanding an arbitrator's authority under the collective bargaining agreement to include a reliance on post-termination evidence which was not known at the time of termination.
 {¶ 22} The Union filed a timely cross-appeal, assigning the following error:
 The trial court erred to the prejudice of the Defendant/Appellee/Cross-Appellant when it improperly dismissed and failed to grant Defendant/Appellee/Cross-Appellant's Complaint for Writ of Mandamus.
 VI. Standard of Review {¶ 23} As a matter of policy, the law favors and encourages arbitration. Mahoning Cty. Bd. of Mental Retardation DevelopmentalDisabilities v. *Page 10 Mahoning Cty. TMR Edn. Assn. (1986), 22 Ohio St.3d 80, 84,488 N.E.2d 872, quoting Campbell v. Automatic Die Prod. Co. (1954),162 Ohio St. 321, 329, 123 N.E.2d 401. Accordingly, courts will make every reasonable indulgence to avoid disturbing an arbitration award. Id. See, also,Stehli v. Action Custom Homes, Inc. (2001), 144 Ohio App.3d 679, 682,761 N.E.2d 129. Arbitration awards are presumed valid and a reviewing court may not substitute its judgment for that of the arbitrator.Findlay City School Dist. Bd. of Edn. v. Findlay Edn. Assn. (1990),49 Ohio St.3d 129, 132, 551 N.E.2d 186. See, also, Marra Constructors, Inc.v. Cleveland Metroparks Sys. (1993), 82 Ohio App.3d 557, 562,612 N.E.2d 806.
 {¶ 24} Because arbitration awards are presumed valid, the trial court's power to vacate a final, binding arbitration award is limited. The legislature has specified the narrow circumstances under which a trial court may vacate an arbitration award. See R.C. 2711.10. Under R.C. 2711.10(D), a trial court may vacate an arbitration award if "[t]he arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter was not made." In evaluating an arbitrator's decision, a reviewing court's role is limited to determining whether the award is unlawful, arbitrary, or capricious and whether it "draws its essence from the collective bargaining agreement." Intl. Assn. of Firefighters, Local 67 v. City ofColumbus, 95 Ohio St.3d 101, 102, 2002-Ohio-1936, 766 N.E.2d 139;Miami Twp. Bd. of Trustees v. Fraternal Order of Police, Ohio LaborCouncil, Inc., 81 Ohio St.3d 269, 273, 1998-Ohio-629, 690 N.E.2d 1262;Queen City Lodge No. 69, Fraternal Order of *Page 11 Police, Hamilton Cty., Ohio, Inc. v. City of Cincinnati (1992),63 Ohio St.3d 403, 406, 588 N.E.2d 802.
 {¶ 25} For an arbitration award to draw its essence from the CBA, there must be a rational nexus between the agreement and the award.Intl. Assn. of Firefighters, supra, citing Mahoning Cty. Bd. of MentalRetardation Developmental Disabilities v. Mahoning Cty. TMR Edn.Assn. (1986), 22 Ohio St.3d 80, 488 N.E.2d 872, paragraph one of the syllabus. "An arbitrator's award departs from the essence of a collective bargaining agreement when: (1) the award conflicts with the express terms of the agreement, and/or (2) the award is without rational support or cannot rationally be derived from the terms of the agreement." Ohio Office of Collective Bargaining v. Ohio Civ. Serv. Emp.Assn., Local 11, AFSCME, AFL-CIO (1991), 59 Ohio St.3d 177,572 N.E.2d 71, syllabus.
 {¶ 26} The parties may appeal from a trial court order that confirms, modifies, corrects, or vacates an arbitration award. R.C. 2711.15;Warren Edn. Assn. v. Warren City Bd. of Edn. (1985), 18 Ohio St.3d 170,173-174, 480 N.E.2d 456. However, appellate review is limited due to the public policy favoring arbitration. Assn. of Cleveland Fire Fighters,Local 93 of the Intl. Assn. of Firefighters v. City of Cleveland,99 Ohio St.3d 476, 2003-Ohio-4278, 793 N.E.2d 484, at ¶ 13. We are restricted to determining whether the award is unlawful, arbitrary, or capricious and whether it draws its essence from the collective bargaining agreement. Id. *Page 12 
 VII. Arbitrator's Power to Modify Termination {¶ 27} In its first assignment of error, the County asserts that the trial court erred in finding that the arbitrator had the authority to modify the discipline imposed on Mr. Ferguson even though the arbitrator had already concluded that the County had just cause for the termination. The County concedes that the CBA grants the arbitrator the power to recommend modification of discipline in cases of discharge, but contends that this power may only be exercised when the arbitrator determines that no just cause exists for the termination.
 {¶ 28} First, we turn to the relevant provision of the CBA. Article 9, Section 9.5 of the CBA states:
 In cases of discharge or of suspension, the arbitrator shall have the authority to recommend modification of said discipline. * * *
Contrary to the County's argument, the CBA grants unequivocal power to the arbitrator to recommend modification of discipline in cases of discharge. It imposes no requirement that the arbitrator must first find the discipline imposed was without just cause.
 {¶ 29} Nonetheless, the County suggests that the issue should be framed as: (1) whether there was just cause to terminate Mr. Ferguson and (2) if not, what is the appropriate remedy? Because the arbitrator concluded that the answer to the first question was affirmative, the County argues the arbitrator should not have addressed the second question. Essentially, the County contends because the arbitrator used the technical phrase of finding "just cause for Mr. Ferguson's termination," he was procedurally precluded from making any *Page 13 
further findings. We disagree.
 {¶ 30} In Board of Trustees of Miami Township v. Fraternal Order ofPolice, Ohio Labor Council, Inc., 81 Ohio St.3d 269, 1998-Ohio-629,690 N.E.2d 1262, the Ohio Supreme Court held that "* * * in the absence of language in the [collective bargaining] agreement that would restrict such review, the arbitrator, after determining that there was just causeto discipline an employee, has the authority to review the appropriateness of the type of discipline imposed." (Emphasis added.) Id. at syllabus. The Supreme Court framed the issues for an arbitrator to consider when determining whether an employee has been discharged for "just cause" as: (1) whether a cause for the discipline exists and (2) whether the amount of the discipline was proper under the circumstances. Id. at 271-272, citing with approval Schoonhoven, Fairweather's Practice and Procedure in Labor Arbitration (3 Ed. 1991).
 {¶ 31} Applying this framework to the issues here, the arbitrator needed to decide: (1) whether there was cause to discipline Mr. Ferguson for appearing at work intoxicated and sexually harassing a co-worker, and (2) whether he should have been terminated for these actions. The arbitrator concluded that there was cause to discipline him but the amount of discipline was not proper based on the mitigation evidence the Union presented.
 {¶ 32} It appears the arbitrator's purpose in finding that the County had just cause to terminate Mr. Ferguson in November 2005 was to establish that the County's actions at that time were reasonable and to support his decision not to award Mr. Ferguson back pay even though it ordered him reinstated. The CBA *Page 14 
clearly authorizes the arbitrator to modify the discipline imposed on Mr. Ferguson and, as the trial court noted, there is no evidence that the parties filed a submission statement directing the arbitrator to narrowly address only the question of whether the County had just cause to discharge Mr. Ferguson in November 2005. Cf. Detroit Edison Co., 82 LA 226 (Jones 1983) (arbitrator did not have authority to determine whether five day suspension was too harsh when parties stipulated that the only issue to be decided was whether employee could be disciplined for actions while on authorized vacation).
 {¶ 33} In summary, we conclude the terms of the CBA provide the arbitrator with broad authority to modify the discipline imposed in cases of discharge. We acknowledge the seeming anomaly in a decision that affirms the existence of just cause for discharge but also grants reinstatement. However, because there is no evidence that the parties stipulated to narrowing the arbitrator's review, the arbitrator did not exceed his authority by taking that action. See Rothschild, Merrifield Craver, Collective Bargaining and Labor Arbitration (3 Ed. 1988), Section 234.10[3]. The trial court correctly found that the arbitrator's decision to modify the discipline imposed on Mr. Ferguson drew its essence from the CBA. Therefore, the County's first assignment of error is meritless.
 VIII. Arbitrator's Authority to Consider Post-Termination Evidence {¶ 34} In its second assignment of error, the County argues that the trial court erroneously concluded the arbitrator had the power to modify discipline based upon after-acquired evidence that was not available to the County at the *Page 15 
time of termination. The County contends the arbitrator exceeded his authority by modifying the County's contractual right to discharge employees for just cause based solely upon evidence known to it at the time of termination. The County relies on Gulf Coast Indust. WorkersUnion v. Exxon Co. (5th Cir. 1993), 991 F.2d 244, 256, for the proposition that the correctness of a discharge "must stand or fall upon the reason given at the time of discharge." We acknowledgeGulf Coast as representing one view on the issue. But it is not the only position that arbitrators and commentators have taken.
 {¶ 35} In Bornstein, Gosline Greenbaum, Labor and Employment Law (2006), Vol. 9, at § 223.06[2], the editors noted that:
 The general rule concerning the appropriateness of reference to post-discharge conduct and/or evidence has long been that, in assessing just cause for discharge, the relevant facts are limited to those in the possession of the employer at the time the discharge decision was reached. However, there is a developing history of arbitration decisions that clearly reveals that weight is, indeed, given in some instances to matters that postdate the discharge.
 {¶ 36} In Iowa-Illinois Gas Electric Co. (1990), 95 L.A. 553, the arbitrator confronted issues similar to those in this case. There, the company discharged an employee because of excessive tardiness. Following the employee's termination, he was diagnosed as suffering from a major depressive disorder and his doctor concluded that his attendance problems were attributable to his illness. The doctor further concluded that the symptoms causing the attendance problems could be resolved with appropriate treatment. The arbitrator recognized that the company did not know about the employee's illness at the *Page 16 
time it terminated him, but found that "the concept of reasonableness embraced within the just cause standard permits him, under the facts as found by him, to consider the post-discharge evidence of rehabilitation." Id. at 556.
 {¶ 37} The arbitrator recognized that in very limited situations under special facts, the arbitrator should consider post-discharge rehabilitation and reinstate an employee. The arbitrator further reasoned that the employee's case was analogous to the way arbitrators have treated some rehabilitated alcoholics. For instance, in Texaco,Inc. (1963), 42 L.A. 408, the arbitrator wrote:
 It is true that in most grievance arbitrations the basic issue to be determined is whether managements' action was proper based upon the facts known at the time the action was taken. Normally the clocks stop at that moment and anything that occurs subsequently is irrelevant. However, there are occasions especially in discharge cases, where events occurring after the incident giving rise to the grievance are given some weight by arbitrators.
 It is a well accepted principle in arbitration . . . that the primary purpose of industrial discipline is not to inflict punishment for wrongdoing, but to correct individual faults and behavior and to prevent further infractions.
 {¶ 38} Based on this authority, we conclude that there is at least some legal support for the arbitrator's decision to consider post-termination evidence and we cannot find that the award is unlawful. Our review of the law on arbitration reveals cases "going both ways" on the issue of post-termination behavior/rehabilitation, i.e. some cases affirm an arbitrator's decision to accept it and others affirm the decision to reject it. Thus, it appears the law gives an arbitrator discretion in this area absent some limiting language in the CBA or submission statement. See Rothschild, Merrifield Craver at Section 234.12[2]. *Page 17 
 {¶ 39} Moreover, although admittedly we do not have a transcript of the arbitration proceedings, there is no evidence in the arbitrator's decision, and the County has not argued, that the County objected to the Union's introduction of the post-termination mitigation evidence. Therefore, the County may have waived its claims regarding the arbitrator's consideration of this evidence. See, by way of analogy,Heldman v. Uniroyal, Inc. (1977), 53 Ohio App.2d 21, 371 N.E.2d 557 (a party waives error if he fails to object to the admissibility of evidence).
 {¶ 40} Even though there is some general legal support for an arbitrator's consideration of the post-termination evidence, if a CBA prohibits the consideration of such evidence then the arbitrator exceeds her authority by relying on the mitigation evidence. However, nothing in the CBA precludes the arbitrator from considering post-termination evidence or provides any guidance concerning what evidence the arbitrator should consider when deciding whether to modify a discipline sanction. Although the County relies on Article 10, Section 10.1 of the CBA, that provision states that the County may not discharge an employee without just cause; it does not prohibit the consideration of mitigation evidence by an arbitrator. Had the parties desired to limit the evidence an arbitrator could consider in discipline cases, they could have explicitly imposed such a limitation either in the CBA or through a submission statement.
 {¶ 41} In rejecting the County's second assignment of error, we are guided primarily by the principle that a reviewing court may not substitute its judgment for that of the arbitrator. We believe that, as the trier of fact, the arbitrator had *Page 18 
the discretion to admit and consider the mitigation evidence because nothing in the law or the CBA precluded him from relying on this evidence in making his decision. Had the arbitrator refused to consider the mitigation evidence, we would likewise have concluded that this decision was also within his discretion. See Rothschild, Merrifield and Craver, supra. And, if this Court was serving as the trier of fact, we may have refused to consider the mitigation evidence and focused only what the County knew at the time it made the discipline decision.
 {¶ 42} Nonetheless, because the arbitrator's consideration of post-termination evidence did not conflict with the law or the terms of the CBA, we find that the trial court did not err in concluding that the arbitrator had the authority to modify the discipline based on post-termination evidence. We overrule the County's second assignment of error.
 IX. Writ of Mandamus {¶ 43} In its cross-assignment of error, the Union argues that the trial court erred by dismissing its complaint and failing to grant a writ of mandamus. The court found that the request for a writ of mandamus was moot once it confirmed the arbitration award because the Union could seek enforcement of the judgment through traditional enforcement methods.
 {¶ 44} For a court to grant a writ of mandamus, the relators must establish: (1) a clear legal right to the requested relief; (2) a clear legal duty to perform these acts on the part of the respondent; and (3) the lack of a plain and adequate remedy in the ordinary course of law.State ex rel. Neff v. Corrigan, 75 Ohio St.3d 12, 16, 1996-Ohio-231,661 N.E.2d 170. *Page 19 
 {¶ 45} We review a trial court's denial of a writ of mandamus under the abuse of discretion standard. Truman v. Village of Clay Center,160 Ohio App.3d 78, 83, 2005-Ohio-1385, 825 N.E.2d 1182. However, the trial court here did not deny the writ of mandamus but dismissed the matter as moot. The issue of mootness presents a question of law; therefore, we review the trial court's finding under the de novo standard of review. See Poulson v. Wooster City Planning Commission, Wayne App. No. 04CA0077, 2005-Ohio-2976.
 {¶ 46} We fail to see how the trial court's confirmation of the arbitration award renders the writ of mandamus moot. In filing the action for a writ of mandamus, the Union sought the reappointment of Mr. Ferguson to his position as a 911 dispatcher and damages for the County's failure to reappoint him when he first sought reinstatement. The confirmation of the arbitration award did not automatically restore Mr. Ferguson to his position; therefore, the Union was still seeking the reappointment and, presumably, damages when the trial court rendered its decision. Because a controversy remained, the trial court erred in concluding that the action for the writ of mandamus was moot.
 {¶ 47} We note, however, that the trial court's judgment confirming the arbitration award may have created a plain and adequate remedy such that the Union may not be able to satisfy the third requirement for the issuance of a writ of mandamus. The Union contends that the filing of an application to confirm an arbitration award is not an ordinary remedy. However, the existence of an already confirmed arbitration award may constitute an ordinary remedy because the confirmed award has the effect of a judgment and can be enforced through a *Page 20 
contempt motion. See American Fed. of State, Cty. Mun. Emp., OhioCouncil 8, Local 100, AFL-CIO v. City of Cleveland (1990),69 Ohio App.3d 128, 131, 590 N.E.2d 286. Nonetheless, we decline to address the merits of the Union's complaint for a writ of mandamus for the first time on appeal. See State v. Thacker, Scioto App. No. 01CA2768, 2001-Ohio-2654 (when lower court did not reach merits of arguments, court of appeals will not consider for first time on appeal).
 {¶ 48} Because we conclude that the trial court erred in dismissing the complaint for a writ of mandamus as moot, we sustain the Union's cross-assignment of error.
 X. Conclusion {¶ 49} Having found no merit in the County's assignments of error, we affirm the trial court's decision denying the application to vacate the arbitration award and granting the application to confirm the award. But, because we find merit in the Union's cross-assignment of error, we reverse the trial court's judgment dismissing the complaint for writ of mandamus as moot and remand this matter to the trial court for further action consistent with this opinion.
 JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND CAUSE REMANDED. *Page 21 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED IN PART, REVERSED IN PART, AND CAUSE REMANDED and that Appellee/Cross-Appellant and Appellant/Cross-Appellee split costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
 McFarland, P.J. Kline, J.: Concur in Judgment and Opinion. *Page 1